[S. F. No. 50. In Bank.—July 23, 1896.]

## MARIA B. OWENS, Appellant, v. ALICE McNALLY, Respondent.

WILLS—CONTRACT FOR TESTAMENTARY DISPOSITION—SPECIFIC PERFORM-
ANCE—UNCERTAINTY—OPPRESSIVENESS—RIGHTS OF THIRD PERSONS.—
A man may make a valid agreement binding himself to dispose of his
property in a particular way by last will and testament, and a court of
equity will enforce such an agreement specifically by treating the heirs
as trustees, and compelling them to convey the property according to
the contract, if it be certain in its terms, and not oppressive, and the
rights of innocent third parties are not involved; but if the contract be
vague and uncertain, or the remedy sought is harsh or oppressive, or
unjust to innocent third parties, equity will withhold its assistance.

ID.—PAROL CONTRACT WITH NIECE—SUBSEQUENT MARRIAGE OF UNCLE—
QUANTUM MERUIT.—Where an uncle made a parol contract with his
niece to come and live with him, and care for him, and that he would
bequeath to her all of the property which he might own at the time of
his death, and he married before his death, the wife being ignorant of
the contract, which was vague and uncertain as to the services to be
rendered by the niece, such contract cannot be specifically enforced
against the widow after the death of her husband; but the niece must
resort to an action of *quantum meruit.*

APPEAL from a judgment of the Superior Court of
Humboldt County. G. W. HARTER, Judge.

The facts are stated in the opinion of the court.

*Buck & Cutler,* and *Frank McGowan,* for Appellant.

A court of equity will specifically enforce an oral
promise to leave another the whole or a definite portion
of one's estate as a reward for peculiar personal services
rendered, or other acts done by the promisee, which are
not susceptible of a money valuation, and were not in-
tended to be paid for in money, provided the considera-
tion has been substantially received at the promisor's
death, and the promisee has acted under the contract,
and has executed it. (*Brinton* v. *Van Cott,* 8 Utah, 480;
*Sutton* v. *Hayden,* 62 Mo. 110; *Wright* v. *Wright,* 99
Mich. 170; Pomeroy on Specific Performance, sec. 114;
*Rhodes* v. *Rhodes,* 3 Sand. Ch. 279; *Gall* v. *Gall,* 19 N. Y.
Supp. 332; *Godine* v. *Kidd,* 19 N. Y. Supp. 339; *Kormin-*

*sky* v. *Korminsky*, 21 N. Y. Supp. 613; *Parsell* v. *Stryker*, 41 N. Y. 480; *Johnson* v. *Hubbell*, 10 N. J. Eq. 332; 66 Am. Dec. 773; *Van Dyne* v. *Vreeland*, 11 N. J. Eq. 378; *Davison* v. *Davison*, 13 N. J. Eq. 246; *Gupton* v. *Gupton*, 47 Mo. 37; *Faxton* v. *Faxon*, 28 Mich. 161; *Shahan* v. *Swan*, 48 Ohio St. 25; 29 Am. St. Rep. 517; *Kofka* v. *Rosicky*, 41 Neb. 328; 43 Am. St. Rep. 685; *Maddox* v. *Rowe*, 23 Ga. 434; 68 Am. Dec. 535; *Jaffee* v. *Jacobson*, 48 Fed. Rep. 21; 1 Cir. Ct. of App. 24; Civ. Code, sec. 1741; *Arguello* v. *Edinger*, 10 Cal. 159.) The contract was not void as *contra bonos mores*, and as contravening the law of descent. (*Johnson* v. *Hubbell, supra;* 22 Am. & Eng. Ency of Law, 974.)

*Chamberlin & Wheeler*, and *George D. Murray*, for Respondent.

The contract is void as *contra bonos mores* and as contravening the law of descent, and equity will not enforce it. (*Davis* v. *Jones*, 94 Ky. 320; 42 Am. St. Rep. 360; *Gall* v. *Gall*, 19 N. Y. Supp. 331; *Lisk* v. *Sherman*, 25 Barb. 433; *Shakespeare* v. *Markham*, 10 Hun, 322; 72 N. Y. 406; *Wallace* v. *Rappleye*, 103 Ill. 229; *Shearer* v. *Weaver*, 56 Iowa, 578; *Shahan* v. *Swan*, 48 Ohio St. 25; 29 Am. St. Rep. 517.) The remedy for specific performance must not be harsh or oppressive, or unjust to innocent third parties not privy to the contract. (Pomeroy on Specific Performance, sec. 181; *Gall* v. *Gall, supra; Wallace* v. *Rappleye, supra; Johnson* v. *Hubbell*, 10 N. J. Eq. 332; 66 Am. Dec. 773; *Austin* v. *Davis*, 128 Ind. 472; 25 Am. St. Rep. 456; *Curran* v. *Holyoke etc. Co.*, 116 Mass. 90.) The contract is indefinite and uncertain; it is neither clear, convincing, or satisfactory, or just and equal in all its parts. (*Ackerman* v. *Ackerman*, 24 N. J. Eq. 587; *Gall* v. *Gall, supra; Lisk* v. *Sherman, supra; Shakespeare* v. *Markham, supra; Wallace* v. *Rappleye, supra; Ikerd* v. *Beavers*, 106 Ind. 483; *Bumpus* v. *Bumpus*, 59 Mich. 95.) Contracts for personal service will not generally be specifically enforced. (*Cooper* v. *Pena*, 21 Cal. 404; *Hamblin* v. *Dinneford*, 2 Edw. Ch. 529;

Pomeroy on Specific Performance, secs. 22, 48, 112, 114, 135, 310; *Clark's case*, 12 Am. Dec. 213, note; *Edwards* v. *Estell*, 48 Cal. 196; *Rhodes* v. *Rhodes*, 3 Sand. Ch. 279; *Sutton* v. *Hayden*, 62 Mo. 101; *Brinton* v. *Van Cott*, 8 Utah, 480; *Sturges* v. *Taylor* (N. J.), 20 Atl. Rep. 370; *Wallace* v. *Long*, 105 Ind. 522; 55 Am. Rep. 222; *Shahan* v. *Swan, supra; Austin* v. *Davis, supra.*)

HENSHAW, J.—This is an appeal from a judgment, the evidence being brought up for review by a bill of exceptions.

The action is prosecuted by Maria B. Owens against Alice McNally, as administratrix of the estate of Lawrence McNally, deceased, and against Alice McNally individually, with whom are joined as defendants all the other heirs at law of said Lawrence McNally.

The action was to compel specific performance of a contract averred to have been entered into by and between plaintiff and Lawrence McNally. In the year 1881 plaintiff was eighteen years old, and was living with her parents in the state of Michigan. Lawrence McNally was the brother of plaintiff's mother, and at that time resided in the city of Eureka, in Humboldt county, state of California, where he continued to reside until his death. "In 1881 said Lawrence McNally had never been married, and was fifty-four years old, and in said year he went to the state of Michigan, and then and there represented to plaintiff, and to her parents, that he was possessed of money and property worth more than twenty thousand dollars, and that he had no one to care for him, and that he desired that plaintiff should leave her home and parents and accompany him to California, and thereafter live with him and care for him; and then and there said Lawrence McNally promised and agreed to with plaintiff that if she would accompany him to California, and live with him and care for him, he would give or bequeath to her all property which he might own at the time of his death."

Under this agreement plaintiff left her home and par-

ents, accompanied Lawrence McNally to California, and from that time until his marriage in 1893 " lived with him, took care of him, and devoted her time, labor, and energy to caring for his health and comfort, and duly performed all the conditions of said contract on her part to be performed by the terms thereof." The complaint then avers the marriage of Lawrence McNally, his death, intestate, and that he left separate estate in real and personal property in the county of Humboldt of a value in excess of twenty thousand dollars.

The court found the contract exactly in the terms of the complaint, as above quoted. It further found that plaintiff had duly performed all the conditions of the contract upon her part to be performed, in accordance with the terms thereof. It found that the contract was in parol, and that it had never been declared or acknowledged by Lawrence McNally in any note or instrument signed by him or by any person thereunto authorized by him in writing so to do.

As matter of law it concluded that as the contract was in relation to real property, it was within the statute of frauds; that the services rendered, and the care bestowed by the plaintiff under the contract, were not of so peculiar or exceptional a nature as that they could not be compensated for in money, and that her performance of these services, and her bestowal of this care, did not operate as a part performance which would take the contract out of the operation of the statute of frauds; that the contract was in relation to both real and personal property, and it was therefore to be regarded as an entirety, and could not be enforced as to the personal property. Judgment for defendants properly followed these conclusions of law.

In view of the multitude of cases which have arisen in other states over contracts such as this, it is indeed curious that in nearly fifty years of judicial life, these questions should be presented to this court for the first time. The result is, however, that the determination of them is not made difficult by an absence of authority,

but rather is made troublesome from a superabundance of cases not always harmonious.

Without entering upon any extended review of the authorities, there is and has been, from a very early date, a general concurrence among them upon the proposition that a man may make a valid agreement binding himself to dispose of his property in a particular way by last will and testament, and a court of equity will enforce such an agreement specifically by treating the heirs as trustees and compelling them to convey the property in accordance with the terms of the contract. The earlier cases in which this question arose were of two general classes, the one being those in which there was an agreement to the making of mutual wills, as the case of *Durour* v. *Perrara*, 2 Harg. 304, in which Lord Camden, in 1769, decreed that an agreement to make mutual wills, when properly proved, is binding on the parties, and will be enforced by a court of equity. So, in the similar case of *Walpole* v. *Orford*, 3 Ves. Jr. 402, while Lord Chancellor Loughborough denied specific performance because of the uncertainty and vagueness of the particular contract, the rule and doctrine previously announced by Lord Camden was never questioned, and has continued to be the accepted law to this day. The other class of early cases grew out of promises to make testamentary settlements in consideration of marriages, in consideration of compromises and the like, and such promises, upon clear proof of their execution, have been uniformly enforced. (*Jones* v. *Martin*, 3 Anstr. 882; *Fortescue* v. *Hennah*, 19 Ves. Jr. 66; *Logan* v. *Wienholt*, 7 Bligh, 1, 53; *Goilmere* v. *Battison*, 1 Vern. 48.)

In *Rivers* v. *Rivers*, 3 Desaus. 190; 4 Am. Dec. 609, the chancellor says: " It appears to me that to make a will in a particular way, on proper considerations, is as much a subject of contract as any other, and he who makes a contract on this subject is as much bound thereby as he would be by any agreement on any other subject.   To be sure, the court would be more strict in

examining into the nature and circumstances of such agreements than any others, and would require very satisfactory proofs of the fairness and justness of the transaction. I conclude, therefore, that the party had a right to bind himself to make his will in a particular way by an agreement, and the court has the power to enforce the agreement."

And in the leading case from New Jersey, *Johnson* v. *Hubbell*, 10 N. J. Eq. 332; 66 Am. Dec. 773, it is said: "There can be no doubt but that a person may make a valid agreement binding himself legally to make a particular disposition of his property by last will and testament. The law permits a man to dispose of his own property at his pleasure, and no good reason can be assigned why he may not make a legal agreement to dispose of his property to a particular individual, or for a particular purpose, as well by will as by conveyance, to be made at some specified future period, or upon the happening of some future event. It may be unwise for a man to embarrass himself as to the final disposition of his property, but he is the disposer by law of his own fortune, and the sole and best judge as to the manner and time of disposing of it. A court of equity will decree a specific performance of such an agreement, upon the recognized principles by which it is governed in the exercise of this branch of its jurisprudence."

This rule, it may be said without further quotation, is supported by the overwhelming weight of authority. It is so declared in New York, in *Parsell* v. *Stryker*, 41 N. Y. 480; *Gall* v. *Gall*, 19 N. Y. Supp. 330; in Missouri, in *Gupton* v. *Gupton*, 47 Mo. 37; in Michigan, in *Faxton* v. *Faxon*, 28 Mich. 161; *Wright* v. *Wright*, 99 Mich. 170; in Ohio, in *Shahan* v. *Swan*, 48 Ohio St. 25; 29 Am. St. Rep. 517; in Utah, in *Brinton* v. *Van Cott*, 8 Utah, 480; in Nebraska, in *Kofka* v. *Rosicky*, 41 Neb. 328; 43 Am. St. Rep. 685; in Georgia, in *Maddox* v. *Rowe*, 23 Ga. 434; 68 Am. Dec. 535; while by the federal courts it is said in *Jaffee* v. *Jacobson*, 48 Fed. Rep. 21; 1 Cir. Ct. of App. 24: "We concede the law to be that a court of equity

will specifically enforce a promise to leave to another the whole or a definite portion of one's estate as a reward for peculiar personal services rendered, or other acts done by the promisee, which are not susceptible of a money valuation, and were not intended to be paid for in money, provided the consideration has been substantially received at the promisee's death"; and the supreme court of the United States in *Townsend* v. *Vanderwerker*, 160 U. S. 171, enunciates the same doctrine. Under these authorities it is held, and it is the generally accepted rule that, while the payment of the purchase price, or the rendition of services, where a contract is within the statute of frauds, is not usually such a part performance of a verbal agreement as will relieve the contract from the operation of the statute, nevertheless, if the services are of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, and it is evident that the parties did not intend to measure them by any such standard, and if the plaintiff, after the performance of the services, could not be restored to the situation in which he was before the rendition of the services, it is such a part performance of the verbal agreement as will remove the contract from the rule, and equity, where other objections are not present, will decree specific performance. But in such cases the reason for the interposition of equity is quite obvious. Plaintiff has rendered service of extraordinary and exceptional character, such service as in contemplation of the parties was not to be compensated for in money, and, as in contemplation of law, cannot be compensated for in money; therefore, by no action at law could a plaintiff be restored to his original position. It would be in the nature of a fraud upon him to deny him any relief, and, the law failing by reason of its universality, equity, to promote justice, makes good its imperfections. (Waterman on Specific Performance, sec. 41; Pomeroy's Specific Performance, sec. 114.)

But the question whether relief should be granted or

denied in a particular case addresses itself peculiarly to the conscience of the chancellor, and, before a plaintiff entitles himself to it, many considerations enter and are to be weighed. The specific performance must not be objectionable upon other grounds. The contract, therefore, must be definite and certain, and the remedy asked for must not be harsh or oppressive, or unjust to innocent third parties, or against public policy, or equity will with propriety withhold its assistance.

We are justified in considering the terms of this contract to be as pleaded by plaintiff and as found by the court. As to the services to be rendered by plaintiff, those were that she should leave her home and parents, accompany McNally to California, " and thereafter live with him and care for him." There is here much vagueness and uncertainty as to how long she was to live with him, as to what kind of service she was to render to him. Where a contract such as this, resting in parol and sought to be enforced after the death of the other party to it, comes before a court of equity for review, it is scrutinized, and should be scrutinized, with particular care, and only upon a satisfactory showing that it is definite and certain and just will it be enforced. The proofs of the contract should be clear, and the acts of the claimant referable alone to the contract. (*Ackerman* v. *Ackerman*, 24 N. J. Eq. 587.) Neither the length of time which plaintiff was to spend in living with and caring for the intestate is made certain, nor the kind or character of the services which she was to render. What position she was to occupy in his household is not made plain. Whether she was to remain there in the capacity of daughter, housekeeper, or menial servant is in doubt.

In the very similar case of *Lisk* v. *Sherman*, 25 Barb. 435, the contract was that the plaintiff was to live with and take care of the testatrix as long as the latter lived, and at her death plaintiff was to have all her property. This case arose in New York, which recognizes the rule as we have given it. The court said that the uncertain-

ties connected with the agreement forbade the idea that any pecuniary amount of compensation for the plaintiff's services could have been in the mind of either of the parties, but that the services to be rendered were uncertain, both in respect to the time they were to continue, and as to their character and extent. For these reasons the court refused specific performance, and left the plaintiff to her action at law upon *quantum meruit.*

So, also, in *Shakespeare* v. *Markham,* 10 Hun, 311, affirmed in 72 N. Y. 400, personal services were to be rendered upon an oral contract, and to be compensated for by a devise of all the property. The court held the services to be so uncertain in their character, not only with respect to the time of their continuance, but in regard to their nature and character, and the compensation to be made for them to be so uncertain, that the contract was one the specific performance of which a court of equity would not be under the necessity of compelling.

On the other hand, it must be said that, looking to the evidence which supports the finding as to the nature of the services to be rendered, it fairly appears that the plaintiff entered the household of Lawrence McNally, and took and occupied the station which would have belonged to his daughter. There is thus in plaintiff's bill an omission of a term favorable to herself, which her evidence makes out, and for this reason, if this were the sole objection, the court might not be justified in withholding relief. (Pomeroy's Specific Performance, sec. 137.)

But we pass to a much more serious question, whether specific performance, if decreed in this case, would not be harsh and oppressive, and unjust to innocent third parties. As was well said in the leading case of *Johnson* v. *Hubbell, supra:* "The complainant has a right to the protection of this court, and its aid in enforcing and protecting his rights, but, if that protection and aid cannot be afforded him without invading and disregarding the rights of others, this court may not, in its anxiety and desire to relieve one party, inflict a wrong and in-

jury upon another entirely innocent in the transaction."

This is the precise situation presented by the peculiar facts of this case. Lawrence McNally married, and at his death left surviving him his widow, one of the defendants in this action. Marriage is a contract viewed by the law with such especial favor, and the family relation is one so deep-seated at the root of our institutions, that contracts in restraint of marriage are void as against public policy, while anything which tends to prevent marriage, or to disturb the marriage state, is viewed by the law with suspicion and disfavor. The defendant widow married McNally in ignorance of the contract, and, it appears, continued in ignorance of the contract until after his death. She acquired distinct rights of heirship and succession. There might have been children born of the marriage with similar rights. It is true that these rights vested after the contract was made, but where a bill is brought for the specific performance of a contract, the after-acquired rights of third parties are equitable considerations to be regarded in adjudicating the questions. (*Curran* v. *Holyoke etc. Co.*, 116 Mass. 90; 5 Wait's Actions and Defenses, 775.)

A specific performance of this contract cannot, therefore, be decreed without sweeping aside, as of no moment or avail, the rights of the wife and widow, vested under a contract most strongly favored by the law.

Specific performance, as we have said, is not to be decreed under strict rule and formula. Every consideration which may properly be urged upon the court is to be weighed and passed upon, and it will be decreed only when no other adequate relief is available to plaintiff, and even then it will be denied if it operates by way of a hardship upon the innocent.

So, while this contract was not void as against public policy at the time it was entered into, it must be held that the parties to it contracted in view of the fact that a subsequent marriage by Lawrence McNally might be consummated, and that the effect of this marriage would

be to compel a court of equity, in justice to the widow or children, to deny specific performance.

Or, viewed in another way, it must have been within the contemplation of the parties that Lawrence McNally might marry, for the contract could not have been designed as a restraint upon his marriage, or it would be void. If it was within their contemplation, and the contract embraced the taking of the deceased's entire estate to the exclusion of any future wife or child, then we have no hesitation in saying that the contract was void as against public policy. The only permissible conclusion is, therefore, that the parties contracted in contemplation of that event. Upon its happening, the rights of innocent third parties intervened, and a decree of specific performance could not be awarded. (*Gall* v. *Gall, supra.*)

The trial court, as has been said, found that the contract in question rested in parol. It is claimed that this finding is error, and that the trial court likewise committed error in rejecting offered parol evidence of a letter written and signed by Lawrence McNally, and containing the contract here in suit. Whether or not the court committed error in its ruling need not be considered. The statute of frauds and perjuries requires a writing to evidence the making of certain kinds of contracts, but, if this particular contract were in writing, the position of appellant would not be bettered. A written contract such as this, for the reasons we have discussed, would not strengthen appellant's position, nor entitle her to the relief sought.

The court, by its decree, denied plaintiff specific performance. We think the decree was just, and that plaintiff, for her recovery, must resort to an action in *quantum meruit.*

The judgment is affirmed.

McFarland, J., Harrison, J., Garoutte, J., Van Fleet, J., and Temple, J., concurred.