[Civ. No. 2654. Second Appellate District, Division One.—July 15, 1919.]

## YSIDORA SCOTT KURTZ, Appellant, v. DOLORES B. de JOHNSON et al., Respondents.

-[1] SPECIFIC PERFORMANCE—CONTRACT TO MAKE TESTAMENTARY DISPOSITION OF PROPERTY—CONDITIONS PRECEDENT TO EQUITABLE RELIEF.—In order to entitle a party claiming under a contract to make a testamentary disposition of property to the specific relief afforded in equity, it must appear that the contract is in all respects just, fair, and reasonable in its mutual compensations; it must be certain in its terms, and a case must be presented that will show such changed conditions on the part of the plaintiff to have been worked by reason of the promise alleged as would result in a fraud being perpetrated against the plaintiff, should the relief be denied.

[2] ID.—CONSTRUCTION OF PAROL CONTRACT.—Such a contract resting in parol and sought to be enforced at a time when the voice of the opposite contracting party may not be heard in opposition thereof will be strictly construed, closely scrutinized, and weighed with a careful balance.

---

1. Specific performance of contract to make will, notes, Ann. Cas. 1914A, 399; 14 L. R. A. 682.

[3] ID.—RESIDENCE WITH PROMISOR UNTIL MARRIAGE OF PROMISEE—UNCERTAINTY.—A contract to leave certain property by will in consideration that the promisee will reside with the promisor until the former's marriage, the promisee being at the time capable of entering into the matrimonial state at the next moment thereafter, is uncertain and unfair in its terms, the continuance of such service being in effect optional with the promisee, and, therefore is not capable of specific enforcement.

[4] ID.—CONSTRUCTION OF CONTRACTS—OBLIGATIONS IMPOSED.—Such a contract must be construed with reference to the obligations which its terms imposed rather than any statement of fact as having represented the actual occurrences which followed its making.

APPEAL from a judgment of the Superior Court of Los Angeles County. Louis W. Myers, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. W. Ashburn, W. I. Gilbert, J. W. McKinley and J. W. McKinley, Jr., for Appellant.

J. Wiseman Macdonald, O'Melveny, Stevens & Millikin, Hunsaker & Britt, Joseph L. Lewinsohn and Henry J. Angell for Respondents.

JAMES, J.—In the superior court demurrers of respondents to the third amended complaint of the plaintiff were sustained without leave to amend. Judgment of dismissal followed, from which plaintiff has appealed.

By this action plaintiff sought, in effect, to have specifically performed an alleged oral agreement made by Arcadia B. de Baker during her lifetime. It was alleged that Mrs. de Baker agreed to devise to the plaintiff a certain tract of land embracing one thousand acres, more or less, the return consideration being, as alleged, that the plaintiff should reside with Mrs. de Baker. The particular character of this consideration will be treated of in detail in what follows. It will be necessary to make quite a full statement of the facts as they are alleged in the amended complaint; in doing this we shall quote liberally the language of the pleader in the statement of the alleged cause of action. It appears, first, from the complaint that in the year 1894 the

---

3. Specific performance of contract to leave property to child in consideration of his living with promisor, note, 44 L. R. A. (N. S.) 756.

plaintiff was eighteen years of age and had prior thereto resided at San Diego with her parents, and that her father was a university graduate, a well-known and highly respected citizen of San Diego. The complaint proceeds with these allegations: "That the parents of plaintiff stood high in military circles and associated with the best society and people of San Diego where plaintiff had formed many acquaintances and close friendships. Plaintiff had three sisters and four brothers, all living with her parents in 1894 at the time of the making of the contract hereinafter referred to. That plaintiff at said time and for a long time prior thereto had been attending a private school in San Diego where she was being educated, including instructions in music and art. That plaintiff was fond of tennis-playing and horseback riding, both of which sports she indulged in at San Diego with her friends and at the time of the contract hereinafter mentioned was a member of a tennis club composed of what was known as the younger society set, members of the best families in San Diego and close friends of plaintiff. The said Arcadia B. de Baker at the time of making the contract hereinafter referred to was residing in apartments in the Baker Block, at Los Angeles, California, and was about sixty-eight years of age, the Widow of Colonel R. S. Baker, and one of the richest women in the state of California, worth, as plaintiff is informed and believes, many millions of dollars, and had many thousands of acres of lands in the state of California, including the Laguna Ranch, which consisted of many thousands of acres. The maiden name of said Arcadia B. de Baker was Arcadia Bandini. Plaintiff was a grand-niece of the said Arcadia B. de Baker. That for many years prior to the making of the contract hereinafter referred to the said Arcadia B. de Baker would upon occasions visit the parents of plaintiff at San Diego and upon those occasions from the time that plaintiff was a little girl the said Arcadia B. de Baker would see plaintiff upon such visits and plaintiff became very well acquainted with the said Arcadia B. de Baker, and the latter upon many occasions expressed great love and affection for plaintiff and said upon many occasions that she would like to have plaintiff as her own daughter. These endearing expressions upon the part of the said Arcadia B. de Baker continued, and the said Arcadia B. de Baker continued to show deep and apparent lasting affection for

plaintiff; that plaintiff also upon occasions would pay short visits to the said Arcadia B. de Baker in Los Angeles and upon said occasions the said Arcadia B. de Baker showed much affection for plaintiff. That plaintiff at the time of making the contract hereinafter referred to, and for a long time prior thereto, was deeply attached by ties of affection to her parents, brothers, and sisters, and also her many friends in San Diego. That in 1894 the said Arcadia B. de Baker, who was a grand-aunt of plaintiff, and a widow without children, residing alone except for a certain servant in her apartments in the Baker Block, in the said city of Los Angeles, invited the plaintiff, who at the said time resided in the city of San Diego, to visit her for a short period of time in the said Baker Block, and thereupon the said plaintiff complied with said invitation and remained with the said Arcadia B. de Baker for a period of about two months, and after which, on or about the twenty-fourth day of November, 1894, at which time the said plaintiff was eighteen years of age, plaintiff much desired to return home and informed the said Arcadia B. de Baker that she would soon return to her parents in the city of San Diego, whereupon the said Arcadia B. de Baker, *with much show of affection, informed plaintiff that she had found her company and companionship quite necessary to her in her old age and that she would like to have plaintiff reside with her until plaintiff's marriage, and informed plaintiff that if she would do so she would leave to the said plaintiff at the time of the death of the said Arcadia B. de Baker a part of the said Laguna Ranch, and that she would sometime thereafter point out the boundaries of the said land to the said plaintiff. Thereupon the plaintiff informed the said Arcadia B. de Baker that she would be pleased to accept her kindly offer and reside with her until her marriage.* Said plaintiff thereafter, and in compliance with said promise, resided with the said Arcadia B. de Baker until her said marriage, which occurred on the eighth day of December, 1897. That during said period of time between the said twenty-fourth day of November, 1894, and the marriage of the said plaintiff, the said Arcadia B. de Baker always treated the said plaintiff as a daughter and showed her during said period of time the greatest of affection, and the said Arcadia B. de Baker often informed the

said plaintiff that her company, companionship, and affection meant a great deal to her and that plaintiff's presence with her gave her much pleasure and happiness, and that she would not be willing to give plaintiff up to any person except her husband at the time of her marriage. That during said time plaintiff and her said grand-aunt were almost constantly together, even occupying the same room and the same bed, which the said grand-aunt insisted upon because she declared her affection was so deep for plaintiff that she always wanted her with her. And the said plaintiff upon her part acted toward and treated the said Arcadia B. de Baker as her own mother and the ties and bonds of affection between them became great by reason of their close association together. That shortly after said promise was made to plaintiff the said Arcadia B. de Baker took plaintiff and the agent of the said Arcadia B. de Baker, Charles H. Forbes, to the said Laguna Ranch and pointed out to plaintiff the land that she had promised to leave the said plaintiff and the boundaries thereof, which was the land hereinafter described. That some time thereafter the said Arcadia B. de Baker had the said property surveyed and a map thereof made by one Captain C. T. Healy, and through him gave to the said plaintiff a map of the said property and upon which map the said Arcadia B. de Baker pointed out to the said plaintiff the said land and the boundaries thereof. That the said land so promised, pointed out, and described to the said plaintiff by the said Arcadia B. de Baker is situated in the county of Los Angeles, state of California, and more particularly described as follows, to wit: . . . That to comply with said promise the said plaintiff was required to and did give up her family life, friends, and associates in San Diego, all of which she missed deeply, and by reason of said fact it would be impossible to place the said plaintiff *in statu quo,* and if the said promise herein made to plaintiff on the part of the said Arcadia B. de Baker is not specifically enforced in a court of equity, it will work a fraud upon plaintiff which cannot be compensated for in any other manner except by the specific performance of said promise. . . . That after said promise was made by the said Arcadia B. de Baker to plaintiff, as plaintiff is informed and believes, the said Arcadia B. de Baker did make a will in which

she left the plaintiff in said will the land above described, but the plaintiff has since the death of said Arcadia B. de Baker hereinafter mentioned made much inquiry and search for the said will but has been unable to find one in existence and has been informed during her extended inquiries and search for said will that the said will had been destroyed prior to the death of the said Arcadia B. de Baker. And the said Arcadia B. de Baker died, as plaintiff is informed and believes, without fulfilling and keeping her said promise under said agreement to this plaintiff. Plaintiff alleges that if the said promise hereinbefore referred to made by the said Arcadia B. de Baker to the said plaintiff on or about the said twenty-fourth day of November, 1894, had not been so made to the plaintiff by her said grand-aunt and made in the kindly and affectionate manner in which it was made, she, the said plaintiff, would not have accepted the said promise and offer upon the part of the said Arcadia B. de Baker and would not have remained and lived with the said Arcadia B. de Baker up until the marriage of the said plaintiff, but would have returned to her home and to her parents and brothers and sisters and friends in San Diego; but it was by reason of the said promise upon the part of the said Arcadia B. de Baker to this plaintiff, and made in the affectionate manner in which it was made, which caused plaintiff to accept the said promise and remain with the said Arcadia B. de Baker up to plaintiff's said marriage. . . . That Colonel Baker,'' husband of Arcadia B. de Baker, ''died on the twenty-sixth day of May, 1894. That at the time the said contract hereinbefore referred to was entered into between the plaintiff and the said Arcadia B. de Baker, the said Arcadia B. de Baker was suffering keenly from the recent death of her said husband and that on or about the date of making said contract the said Arcadia B. de Baker informed the said plaintiff that it was her wish and desire to have plaintiff with her and near her to love, particularly at that time, as she, the said Arcadia B. de Baker, found her life very lonesome and void after the death of her said husband, and that she had no relative living with her upon whom she could bestow her affections, and that plaintiff's society and affection would in a measure atone for the loss

she had suffered in her late bereavement. That during the time that said plaintiff resided with said Arcadia B. de Baker in the fulfillment of the said contract and agreement, the said Arcadia B. de Baker often told plaintiff that because of her great love for plaintiff that she had never been more happy than during the time that plaintiff was residing with her.'' Upon information and belief the plaintiff alleged further that the land was, at the time of the making of the alleged promise, of the value of twenty-five thousand dollars. It was further alleged that after the marriage of the plaintiff she and her husband took apartments in the Baker Block, being the same building occupied by Arcadia B. de Baker, and remained there for a period of about nine years, ''during all of which time the affectionate relation between plaintiff and the said Arcadia B. de Baker continued.''

Respondents urge a number of contentions against the validity of the alleged contract and as showing that the same was not of such a nature as would be enforced by a court of equity. Among other grounds, it is asserted that the contract is obnoxious to the statute of frauds, and that plaintiff is barred of the remedy sought by laches. The principal contentions, however, are comprehended in a statement made in the brief, that ''the alleged contract is not founded on adequate consideration and is harsh and unjust. The alleged contract is vague and uncertain.'' [1] It is well settled that in order to entitle a party, claiming under a contract such as that here alleged, to the specific relief afforded in equity, it must appear that the contract is in all respects just, fair, and reasonable in its mutual compensations; that it must be certain in its terms, and a case must be presented that will show such changed conditions on the part of the plaintiff to have been worked by reason of the promise alleged as would result in a fraud being permitted to be perpetrated against the plaintiff should the relief be denied. [2] Preliminarily, it may be said that such a contract, resting in parol and sought to be enforced at a time when the voice of the opposite contracting party may not be heard in opposition thereof, will be strictly construed, closely scrutinized, and weighed with a careful balance. It must be such as, attended by all the attributes of frank-

ness, fairness, and honesty, will appeal to the conscience of the chancellor. That such is the uniform rule has been often announced; its substance is declared in *Owens* v. *McNally,* 113 Cal. 444, [33 L. R. A. 369, 45 Pac. 710].
[3] Examining the alleged contract, as set forth in plaintiff's amended complaint, by this standard and measure, we reach the same conclusion as did the trial judge, and affirm that the plaintiff has not presented such a state of facts as should call into action the unusual power of a court of equity in determining that, as against the administrator and heirs of Arcadia B. de Baker, a trust has been impressed upon the land referred to in favor of the plaintiff. The contract appears to be uncertain and unfair in its terms. It will be noted that Mrs. Baker agreed to "leave to the plaintiff," at the time of the former's death, large acreage of land, then of great value, in return for what? That the plaintiff would "reside with her until the plaintiff's marriage." Generally, it may be gathered from the allegations quoted that the companionship of the plaintiff was sought by Mrs. Baker and that that companionship was mutually agreeable to both parties. But how long under the agreement made was the return consideration to be rendered by the plaintiff to continue? Plaintiff alleged that it was to continue until her (the plaintiff's) marriage. At the time of the making of the agreement the plaintiff was eighteen years of age and capable of entering into the matrimonial state at the next moment thereafter. In so far as the agreement bound her to continue to render any service to Mrs. Baker, the continuance ·of such service was in effect optional—that is, until plaintiff received and concluded to accept an offer of marriage. As a matter of fact, she did marry three years after the making of the alleged agreement, while Mrs. Baker continued to live for an additional term of about fifteen years, during which latter time, by reason of the condition of the contract, plaintiff was not bound to live with or see or visit her benefactor. We say that the contract was uncertain because the termination of the period of service of the plaintiff was altogether a matter of her own option. [4] The contract must be construed with reference to the obligations which its terms imposed, rather than any statement of fact (which the complaint gives illustration of) as

having represented the actual occurrences which followed. It is immaterial that plaintiff and her husband did reside in the same building with Mrs. Baker subsequent to the plaintiff's marriage; plaintiff was under no obligation so to do, and her act in so doing was not in any wise, when legally considered, in execution of her agreement. She terminated her obligation when she married. The case is very different from some to which our attention has been called, where the party seeking to enforce a contract of this general kind agreed to and did render service up to the date of the death of the other person. It cannot be said, we think, that where the plaintiff had the privilege of terminating her residence with Mrs. Baker at any time after the making of the agreement by selecting a husband, she contracted to render adequate consideration in return for the tract of land. Were we to sweep aside these objections which we deem insuperable to the enforcement of the contract, we would still have to consider as to whether the plaintiff, by reason of the making of the agreement, so changed her situation that to deny her relief would work a fraud upon her. She had reached the age of maturity and was a member of a large household, there being seven children besides herself; she was in the habit of visiting Mrs. Baker, who was a wealthy woman and from whom, we can infer from the allegations of the complaint, she received every care, attention, and consideration; in fact, it appears by express allegation that the attachment after the relations were commenced under the contract was mutual. There is nothing shown from which we can infer that plaintiff was denied the right to visit her family or to have the members thereof visit her. It is stated that she was a member of some social organizations composed of "the best" people in the city of San Diego, and that such associations were interrupted; but we are inclined to the view that the latter consideration alone would not be sufficient to justify the conclusion that the change made was to her great injury. If we were permitted to speculate at all, we might fairly infer the contrary. See *Baumann* v. *Kusian,* 164 Cal. 582, [44 L. R. A. (N. S.) 756, 129 Pac. 986], which case, together with cases cited therein, is very much in point upon the propositions hereinbefore discussed.

*McCabe* v. *Healy,* 138 Cal. 81, [70 Pac. 1008], is clearly distinguishable from this case upon its facts.

The questions discussed are determinative against the right of the plaintiff to recover in this action, and it seems to us unnecessary to enter upon a discussion of any other phases of the argument as presented in the briefs.

The judgment appealed from is affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 12, 1919, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 11, 1919.

All the Justices concurred.