[Civ. No. 2099. Fourth Appellate District.—October 5, 1938.]

ELIZABETH S. BROWN, Appellant, v. HERMAN FREESE, as Executor, etc., et al., Respondents.

Chester Allen Smith and Robert B. Burch for Appellant.

Stearns, Luce, Forward & Swing for Respondents.

LEONARD, J., *pro tem.*—This is an appeal from a judgment in favor of the respondents, denying, in effect, specific performance of a written agreement between Mary E. Whitney, now deceased, and the appellant, wherein Mrs. Whitney agreed not to revoke a will and codicils thereto in so far as they related to property left to appellant. Herein, both the will and codicils will be referred to as the will.

Mrs. Whitney was the widow of Willard W. Whitney, deceased, who left an estate of considerable value. Mrs. Whitney and C. L. Fairbank were heirs. Among Mr. Whitney's many bequests was one in trust for the benefit of the scientific library of the National History Museum of Balboa Park, San Diego. Litigation developed between Mrs. Whitney and other heirs, and the trustees of the museum trust.

Appellant claims that she rendered valuable services to Mrs. Whitney in that action and also other services, which constituted the consideration for the agreement not to revoke the will and codicils.

Appellant was a distant cousin of Mrs. Whitney. They had been friends since October, 1922, about two or three years prior to making the will. In that year appellant called to see Mrs. Whitney and then left for Arizona with a sick daughter, returning in November, 1923, after the daughter's death. Appellant's funds, at that time, were practically exhausted, and she had no income. Shortly after returning from Arizona, appellant again saw Mrs. Whitney and told her she was going to return to Los Angeles. This resulted in Mrs. Whitney's securing a position for appellant at the scientific library at a salary of $40 per month. In April, 1924, after appellant had spent about three weeks as a guest in Mrs. Whitney's home the two women had an oral understanding that they would live together during Mrs. Whitney's lifetime, and Mrs. Whitney would make provision for the care and support of appellant. Appellant received her salary of $40 per month from the library until the end of May, 1924, at which time she gave up her position at the library and thereafter, until December, 1925, Mrs. Whitney paid her $40 per month, and in return therefor, appellant cooked the food, and Mrs. Whitney washed the dishes and paid for all the food, and also paid a laundress who did the other work. In June, 1924, the two women traveled to Alaska, and in the following year they took another trip to Yosemite and Yellowstone Park, all at Mrs. Whitney's expense. In December, 1925, appellant became ill and was taken to a hospital. The $40 per month payments ceased, but Mrs. Whitney paid all expenses incidental to such sickness. About March 1, 1926, appellant returned from the hospital to Mrs. Whitney's home, but too ill to do any household work, and Mrs. Whitney suggested to

her that in view of appellant's illness they ought to live apart, which was agreeable to appellant.

At that time Mrs. Whitney stated to appellant that she had drawn up an agreement to be signed, and proposed that they submit it to her attorney. On March 3, 1926, they both saw this attorney and handed him the draft of agreement Mrs. Whitney had prepared. He suggested that the words in the agreement: "and if she does nothing to injure me", be changed to "and if she remains faithful to her duties as a friend". This change was made by Mrs. Whitney in a new draft of the agreement, which was again submitted to the attorney, and at his suggestion the word "unrevoked" was written in the agreement in the last line, and as thus changed it was signed by both parties. This agreement, which is the subject of this litigation, is as follows:

"AGREEMENT BETWEEN MARY E. WHITNEY AND ELIZABETH S. BROWN.

"THIS AGREEMENT made this 3rd day of March, 1926, between MARY E. WHITNEY, party of the first part, and ELIZABETH S. BROWN, party of the second part, in which both parties hereby agree that, after two years of living together in congenial companionship, circumstances seem to require a change, and the party of the second part to seek a new home.

"As the party of the first part has, during the past two years, provided for the expenses of the party of the second part; and as the party of the second part has rendered valuable assistance to the party of the first part, as well as to all the other legatees under the will of W. W. Whitney, in the litigation between the legatees and the Trustees of the Whitney estate; therefore, as compensation and reward to the party of the second part for her services and assistance, the party of the first part agrees to give to the party of the second part as an allowance the sum of One Hundred Dollars ($100.00) per month during the life of the party of the first part; and, provided the party of the second part fulfills her part of this agreement; and remains faithful to her duties as a friend to the party of the first part, the party of the first part promises that the terms of her will dated January 27, 1925, and her codicil dated June 10, 1925, and November 28, 1925, relating

to ELIZABETH S. BROWN, party of the second part, shall remain unrevoked and unaltered as to any property left to ELIZABETH S. BROWN therein.

"MARY E. WHITNEY

"ELIZABETH S. BROWN.

"Witnesses:

"CHARLES E. BUTLER

"JOHN W. RUMMAGE."

From the date of the agreement until the death of Mrs. Whitney, covering a period of about ten and one-half years, the two women saw very little of each other and had but little communication or association with each other, although their relations remained friendly and were always pleasant and congenial.

Under the terms of the will referred to in the agreement there had been devised to appellant the real estate sought to be recovered in this case.

Mrs. Whitney carried out the terms of the agreement for the payment of $100 per month, except for the last two months prior to her death, making the total cash payments to appellant $12,700 but revoked the will and left the real estate to Ione B. Fairbank. This real estate was found by the court to be worth about $12,000. It was also found that the services rendered by appellant in connection with the litigation, consisted mainly in clerical assistance to Mrs. Whitney and her attorney; that all information obtained by appellant in her examination of papers and documents could have been readily obtained by Mrs. Whitney and her attorney; that such services were not of any substantial value to Mrs. Whitney or her attorney; that all such services were rendered while appellant was receiving the $40 per month from Mrs. Whitney, together with her room and board, and without any agreement as to any compensation, and as an act of friendship to Mrs. Whitney; that appellant did not procure evidence of any facts of a personal or secret nature in respect to the affairs of Willard W. Whitney which were confidential; that since the execution of the agreement the appellant had not rendered any substantial service to Mrs. Whitney or performed any services of a friendly nature or that were of any value and advantage or benefit to Mrs. Whitney, except a few very unsubstantial acts and matters which were of no value

or substance whatsoever; that the agreement was not fair, just or reasonable as to Mrs. Whitney and that the consideration therefor was wholly inadequate; that appellant was fully compensated by Mrs. Whitney by the payment of said sum of $12,700.

The action is, in effect, one in equity, to enforce specific performance of the written agreement. "The principle upon which courts of equity undertake to enforce the execution of an agreement to dispose of property in a particular way by last will and testament is one which is referable to the subject of specific performance." (*Rundell* v. *McDonald,* 62 Cal. App. 721, 728 [217 Pac. 1082]. See, also, *Wolf* v. *Donahue,* 206 Cal. 213, 220 [273 Pac. 547].)

Relying upon these principles of equity, respondents contend that the agreement is not fair or just to Mrs. Whitney nor supported by an adequate consideration, and around this contention centers much of the argument on this appeal. Appellant not only refutes respondent's contention, but maintains that she has performed her part of the agreement, and therefore these equitable principles are not available to respondents. Before entering into this phase of the controversy it may be well to consider whether the agreement is entire or separable. The first part relates wholly to past services for which an agreed money compensation is fixed. The second part relates to a different subject-matter—a promise not to revoke a will so as to affect appellant's right to inherit certain real estate thereunder.

In *Waybright* v. *Meek,* 90 Cal. App. 13, 17 [265 Pac. 370], it is said:

"Whether a contract is entire or separable depends upon its language and subject matter, and this question is one of construction to be determined by the court according to the intention of the parties. Where several things are to be done under a contract, if the money consideration is apportioned to each of the items to be performed, the covenants are ordinarily regarded as severable and independent. (*Pacific Wharf etc. Co.* v. *Standard American Dredging Co.,* 184 Cal. 21 [192 Pac. 847].) Here the consideration is apportioned to each of the items of services. Neither item is a part of the other nor are they in any manner dependent upon each other. The first one was fully performed by respondent and

his assignor and they are entitled to the compensation which the agreement provided for." (See, also, *Sterling* v. *Gregory*, 149 Cal. 117 [85 Pac. 305].)

Under the rules of construction announced in these cases we think the agreement must be held to be separable, but whether this view is correct or not would not affect our ultimate conclusion as to whether the agreement was fair, just or reasonable, or the consideration adequate. Appellant suggests that the words "and provided the party of the second part fulfills her part of this agreement", preceding the words "and remains faithful to her duties as a friend", ties the contract together as an entire contract. There is nothing in the contract that requires appellant to do anything except to "remain faithful to her duties as a friend", and the expression requiring appellant to fulfill her part of the agreement, we think, relates to the expression to remain faithful, etc., and has no relation to the first part of the agreement.

To enforce the contract it must appear that it was just, fair and reasonable as to Mrs. Whitney; that the consideration was adequate; that it is definite and certain in its terms; that the case presented shows "such changed conditions on the part of the plaintiff to have been worked by reason of the promise alleged as would result in a fraud being permitted to be perpetrated against the plaintiff should the relief be denied"; and that it is founded upon good morals, not against public policy. (*Kurtz* v. *de Johnson*, 42 Cal. App. 221, 227 [183 Pac. 588]. See, also, *Stiles* v. *Cain*, 134 Cal. 170, 171 [66 Pac. 231]; *Baumann* v. *Kusian*, 164 Cal. 582, 589 [129 Pac. 986, 44 L. R. A. (N. S.) 756]; *Wolf* v. *Donahue, supra.*)

Before enforcement can be had in cases of this character "the court will be more strict in examining into the nature and circumstances of the agreements than any others, and will require very satisfactory proof of the fairness and justness of the transaction." (*Wolfsen* v. *Smyer*, 178 Cal. 775, 783 [175 Pac. 10].) "Whether relief should be granted or denied in a particular case addresses itself peculiarly to the conscience of the chancellor, and, before a plaintiff entitles himself to it, many considerations enter and are to be weighed." (*Owens* v. *McNally*, 113 Cal. 444, 450 [45 Pac. 710, 33 L. R. A. 369].)

In construing the contract, it must be with reference to the obligations which its terms impose. These are, expressed in the language of the contract, "and provided the party of the second part (appellant) fulfills her part of this agreement; and remains faithful to her duties as a friend to the party of the first part" (Mrs. Whitney). What part of the agreement was appellant to fulfill? Nothing that preceded the quoted language obligated appellant to do anything. Her obligation, whatever it may have meant, was to "remain faithful to her duties as a friend". This obligation was the basis for Mrs. Whitney's promise not to revoke the will. What appellant's duties were are not defined. We might speculate as to these duties, but this would not satisfactorily clear up the uncertainty that exists. Does the expression mean that appellant would be as faithful as a friend would or ought to be in the performance of her undefined duties, or does it mean that she would be a dutiful friend—that her relations with Mrs. Whitney would be friendly and that she would take an active interest in Mrs. Whitney's welfare, or has it another or an undisclosed meaning?

In whatever view we may consider it, there still remains a decided element of uncertainty. If we consider the circumstances under which the agreement was made, at least some of the uncertainty is removed. In the original draft of the agreement by Mrs. Whitney she used the expression "and if she does nothing to injure me", but when the attorney looked over the agreement he suggested that this expression be changed to read, "and remains faithful to her duties as a friend". He explained to them that it would mean the same thing, but sounded better. Perhaps he had in mind one of the Century Dictionary's definitions of the word "duty"— "the binding and obligatory force of that which is morally right". The change was made, and both parties apparently understood that the two expressions meant the same thing so far as they were concerned.

What led to this original clause in the agreement is perhaps best explained by appellant in her complaint and in her testimony. She, in effect, alleges that the expression in the agreement "remain faithful to her duties as a friend" was intended by both parties to mean that appellant would not reveal certain information she had obtained in connection

with her services for Mrs. Whitney in the examination of her files, and that she would follow the direction of Mrs. Whitney in the matter. Appellant testified in her own behalf as follows:

"Q. Did Mrs. Whitney ask you not to reveal any information which you acquired in your investigation? A. Yes. Q. Of what nature was that information? A. I should call it strictly confidential. . . . Q. Transactions in which Mr. Whitney had participated? A. Yes. Q. Mrs. Whitney expressed the desire that you did not reveal what you had learned in respect to it? A. Yes, sir."

On cross-examination, in answer to some questions relative to the same matter she said that Mrs. Whitney told her "there would not be a cent left in the Whitney estate if the stockholders got hold of it".

"Q. She asked you to keep it confidential? A. To keep her confidence and keep it buried."

Asked as to whether she, as a friend of Mrs. Whitney's would have obeyed Mrs. Whitney's request not to reveal the information, she answered:

"Yes, I think I would, it is a matter of principle. Q. As a matter of principle. A. But she didn't look at it in that way, she said I could make lots of money, as she expressed it, by giving up this information to the proper authorities. . . . Q. Did you discuss with her what she meant by 'if you did nothing to injure her'? A. Well, she mentioned something that would injure her, if I told of that, and I said I would not think of such a thing. Q. Are you referring now to the information that you have just been telling us about? A. Yes, and other information. . . . Q. The fact that she was going to leave you something in her will had nothing to do with your decision not to disclose that information, did it? A. That is a hard question to answer."

In response to a question relative to the consideration, appellant testified: "It was her (Mrs. Whitney's) idea of what constituted injury to her. She put the price, I didn't."

■ There is considerable additional testimony relative to the "other information" which Mrs. Whitney desired not to have disclosed, but it is unnecessary to further quote the testimony. It is quite apparent that Mrs. Whitney was under the impression that the so-called "strictly confidential" in-

618

formation acquired by appellant would or might reflect upon the honesty and integrity of her deceased husband, and to protect his memory she was willing to "put the price" therefor. With this background, we can readily understand why Mrs. Whitney incorporated into the agreement the words "if she does nothing to injure me". Apparently the consideration for the agreement not to revoke the will grew out of at least an implied promise or understanding that appellant would not disclose the so-called "strictly confidential" information.

It is said in Restatement of the Law of Contracts, section 557:

"A bargain that has for its consideration the nondisclosure of discreditable facts, or facts that the promisee is under a fiduciary duty not to disclose, is illegal.

"*Comment: a.* In many cases falling within the rule stated in the section the bargain is illegal whether or not the threats go so far as to bring the case within the definition of duress. In some cases, moreover, disclosure may be proper or even a duty, and the offer to pay for nondisclosure may be voluntarily made. Nevertheless the bargain is illegal. Moreover, even though the offer to pay for nondisclosure is voluntarily made and though there is no duty to make disclosure or propriety in doing so, a bargain to pay for nondisclosure is illegal."

██ Even though we treat the contract as valid, it still cannot be enforced in a court of equity, as one of the essential elements to be established is that the consideration was adequate.

The findings, fully supported by the evidence, show that since the execution of the agreement, appellant had not rendered any substantial services to, nor conferred any substantial benefit upon Mrs. Whitney, other than a few very unsubstantial acts and matters which were of no value or substance. It is unnecessary to attempt to review the testimony of the various witnesses upon this point. Whatever services had been rendered by appellant prior to the execution of the agreement had been compensated as provided for therein by the monthly cash payments.

The promise not to revoke the will was based upon a new and different consideration than that for past services. This

consideration, as expressed in the agreement, required appellant to "fulfill her part of this agreement; and remain faithful to her duties as a friend". Appellant's part under the agreement was to "remain faithful to her duties as a friend". The consideration mentioned is too indefinite and uncertain to suggest what the duties were. The nature of them, the time or manner of performance, how long to be continued, and where or how to be performed are all left to conjecture and speculation. Other elements of uncertainty, unnecessary to detail, arise when we undertake to consider just what appellant was to do to "fulfill her part of this agreement". In *Owens* v. *McNally, supra,* the court, in commenting on the uncertainty of the contract under consideration, said:

"As to the services to be rendered by plaintiff, those were that she should leave her home and parents, accompany McNally to California, 'and thereafter live with him and care for him'. There is here much vagueness and uncertainty as to how long she was to live with him, as to what kind of service she was to render him. . . . Neither the length of time which plaintiff was to spend in living with and caring for the intestate is made certain, nor the kind or character of the services which she was to render."

The court cites several cases, all to the effect that where the services to be rendered were uncertain, both in respect to the time they were to continue, and as to their character and extent, specific performance would be refused and plaintiff left to her action at law upon *quantum meruit.*

The consideration being vague and uncertain renders it subject to the objection that it was inadequate. If we look at the meaning of the expression from any other angle than that discussed, we do not escape its uncertainty.

It is not necessary to enter into any further discussion to support the findings that the contract as to Mrs. Whitney was not fair, just or reasonable and supported by an adequate consideration. We may say, as was said by the appellate court in *Kurtz* v. *de Johnson, supra,* "Were we to sweep aside these objections which we deem insuperable to the enforcement of the contract, we would still have to consider as to whether the plaintiff, by reason of the making of the agreement, so changed her situation that to deny her relief would work a fraud upon her." ■ In the instant case the ap-

pellant has failed to show any change of situation that could be held to work a fraud upon her in denying her the relief sought. This is true, whether we look at the agreement as an entirety or as separable. She was adequately compensated for any service she rendered, and it cannot successfully be said that she suffered any detriment growing out of the agreement. All services rendered could readily be compensated in money, and a resort to equitable relief under such circumstances is not available to appellant.

In *Flood* v. *Templeton*, 148 Cal. 374, 378, 379 [83 Pac. 148], speaking of the courts entertaining contracts for specific performance, it is said:

" . . . it does so only where the plaintiff cannot be compensated in money. . . . So it will be found that in all of the cases in which specific performance of these agreements to leave property by will has been decreed by the courts, there has been present the element of peculiar personal services, fully performed and incapable of compensation in money."

Other points are urged by respondent in support of the judgment, but it is unnecessary to notice them.

■ Appellant contends that the defense of inadequacy of consideration, and the defense that the agreement was not fair, just or reasonable cannot be raised against her because such defenses were not specifically pleaded by defendants, and that Mrs. Whitney had accepted the consideration. The burden of stating a cause of action was upon appellant. In *Flood* v. *Templeton, supra,* it is said, "the complaint must show that the party against whom enforcement is sought has received adequate consideration and that the contract is just and reasonable". In *Stiles* v. *Cain, supra,* it is said, referring to another California case (*Bruck* v. *Tucker*, 42 Cal. 346): "the party seeking such relief must show, both by averment and proof, that the contract is, as to the defendant, fair and just". Appellant's complaint contains certain allegations which the parties assumed stated a cause of action, and these allegations were denied. This, we think, was sufficient. In any event, the case was tried upon the theory that these issues were presented by the answer.

■ On the point that an acceptance of the consideration constituted a waiver to any claim of inadequacy, it may be said first, that there is nothing to show that the consideration

was accepted, because it cannot be determined with any certainty what the entire consideration was; and second, that acceptance ·alone is not sufficient to constitute a waiver. It must also appear that the accepted services were incapable of compensation in money. (*Flood* v. *Templeton, supra.*)

 Appellant further contends that monetary relief should have been awarded to her. There is nothing in the case that would either warrant or support a money judgment. Under the facts of the case as found by the trial court, and supported by the evidence, to have given a money judgment to appellant would have been unjust and inequitable.

Some other points are relied upon by appellant, but what has been said renders it unnecessary to consider them.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 1, 1938.