JESSIE VER STANDIG, Appellant, v. ST. LOUIS UNION TRUST COMPANY, a Corporation, Executor of the Estate of CORA WEIL ET AL.—129 S. W. (2d) 905.

Division One, June 14, 1939.

*Donnell & McDonald* and *George F. Wisc* for appellant.

*Meyer Blocher* for Jewish Orphans' Home of St. Louis; *Bryan, Williams, Cave & McPheeters* for St. Louis Union Trust Company, Millie W. Barnett, Josie E., Henry, Delia, and Jacob Weil, Alma Weil Sigan, Dorothy Levy, Rosalind Weil Harris, Meyer, David and Oscar Weil, Ernie Loeb and Ina Burns.

DOUGLAS, J.—This is an action for the specific performance of an oral contract to devise real estate. It is alleged that the contract was made by Cora Leon Weil, deceased, and Bernard Ver Standig, plaintiff's husband, and which the deceased agreed to devise a store and apartment building at De Baliviere and De Giverville Avenues in St. Louis to plaintiff in consideration of services to be rendered to deceased by plaintiff's husband. Bernard Ver Standig first filed a claim against Mrs. Weil's estate for the services rendered. He recovered, but his claim was ultimately knocked out by the St. Louis Court of Appeals on the ground that the present plaintiff is the proper party to make claim on the contract as the one for whose benefit the contract was made. [228 Mo. App. 1242, 62 S. W. (2d) 1098.] Immediately after that decision the present suit was filed. A demurrer to the petition was sustained and the bill dismissed. On appeal to this court the order of the trial court was reversed and the cause remanded. [339 Mo. 539, 98 S. W. (2d) 588.] Thereupon, a trial was had and judgment was entered in favor of the defendants and dismissing the plaintiff's bill. From that judgment plaintiff now appeals.

The petition alleges that in November, 1917, Cora Leon, then a widow, and Bernard Ver Standig orally agreed that he should continue to render until her death all such services as she would request of him with respect to her personal and business affairs, for which she would devise to plaintiff the property above mentioned. In pursuance of such agreement he rendered all the services she requested which consisted, generally, in supervising and managing her real estate, tending to leases, advising her about investments and almost daily personal attentions. The petition sets out the same services which are detailed in the Court of Appeals' opinion to which we make reference for the complete statement. In 1923 Cora Leon married Julius Weil. Thereafter, she did not request assistance as she did before her

marriage. In 1929, she died leaving a will but failed to devise the property to the plaintiff. Julius Weil, her husband, renounced the will and elected to take one-half of the real and personal property of his wife's estate. He died in July, 1930. The defendant trust company was named executor of the wills of both Cora and Julius Weil, and other defendants include legatees under both wills. The petition prays for the title to the property to be vested in plaintiff and for an accounting of the rents and profits.

Defendants' answers make general denial of the petition and allege that if such contract was made it was by abuse of a confidential and fiduciary relationship; that Julius Weil had no knowledge of the contract; and as husband of Cora Weil his rights and the rights of his devisees are superior to those asserted by the plaintiff.

In a memorandum filed with the judgment the learned and distinguish chancellor stated that in his opinion the evidence was not sufficient to establish the contract. We do not agree with his finding. Where a case rests on testimony alone and that testimony is conflicting and contradictory so that the question becomes one of the credibility of the witnesses who were observed by the chancellor, then this court will usually defer to his findings unless we find them to be against the weight of the evidence. [Kingston v. Mitchell (Mo.), 117 S. W. (2d) 226.] In addition specific performance is not a matter of right even though a party is entitled to compensation, but it rests entirely within the sound discretion of the chancellor to grant it. Especially is this true where the alleged contract is for the devise of land. Even so, when this court has found the weight of the evidence to be against the decree which has been entered, it has reversed the trial court, made its own findings and determined what decree should be entered. [Peikert v. Repple, 342 Mo. 274, 114 S. W. (2d) 999.]

Because of opportunities for fraud the courts have established rigid rules governing the specific performance of an agreement when sought for after the death of the promisor. The contract must be proven to be clear, definite, fair and based upon a proper consideration. A high character of proof is required. [Kirk v. Middlebrook, 201 Mo. 245, 100 S. W. 450; Walker v. Bohannon, 243 Mo. 119, 147 S. W. 1024; Selle v. Selle, 337 Mo. 1234, 88 S. W. (2d) 877; Stibal v. Nation (Mo.), 98 S. W. (2d) 724.] In the Kirk case, it is pointed out that an oral contract for a devise could not be enforced at law because of the Statute of Frauds and the Statute of Wills and that equity intervenes only to prevent the enforcement of such statutes from working an equitable fraud upon the promisee who has performed his part of the contract. However, equity will take this step only when it is clear that to deny the relief would be to strike down the underlying purpose of the Statute of Frauds which is the prevention of frauds and perjuries. Thus arises the necessity for certain and cogent evidence to prove the contract. In following such rules

we cannot overlook the fact that we are dealing with an oral contract and the inherent infirmities attendant upon its establishment. The law of each case must arise from the facts of that case.

■ To prove the contract, the following testimony was introduced in behalf of the plaintiff about conversations with Cora Leon Weil.

Anthony J. Gorosky: "I says to her, 'Mrs. Leon, what do you intend to do with all this money?' and she said, 'I am going to give it to Mr. Ben Ver Standig so he will invest it for me in good paying bonds. He takes care of all of my business.' So, out of curiosity, I says, 'Mrs. Leon, what do you pay Mr. Ver Standig for this?' and she said, 'I ain't paying him a cent.' 'I agreed to will this building to Mrs. Ver Standig—Jessie.' 'Oh,' I said, 'that is something to. work for,' and she said, 'Sure.' . . . I said, 'Mrs. Leon, how much do you pay Mr. Ver Standig for the work he is doing?' and she said, 'I am not paying him a cent.' 'I have agreed to will this building to his wife for the work he is doing.' "

Describing a later occasion he said: "She was so elated—she said, 'Mr. Gorosky, we have leased all the stores to Melsheimer.' I said, 'My, that is wonderful; that is fine.' I said, 'What do you mean by "we?" ' and she said, 'Mr. Ver Standig and myself— Ver Standig and myself.' So I says to her, 'What are you going to pay Mr. Ver Standig for this special work?' She said, 'I ain't paying him a cent.' She said, 'I told you before I am going to will the building to his wife.' 'Why should I pay him anything?' 'Just like working for himself.' . . ."

Elsie Hess: ". . . There was Mr. and Mrs. Ver Standig and Mrs. Leon and myself and Mr. Altheimer's sign was being taken down, and I said to Mrs. Leon, 'Oh,' I said, 'are you taking the building away from Mr. Altheimer, now that he has rented it?' and she said, 'Yes, I have made arrangements with Mr. Ver Standig whereby he is to take care of the building in exchange for the building when I die.' . . .

"Q. Who was there at the time when that was said? A. There was Mr. and Mrs. Ver Standig, Mrs. Leon and myself, and I couldn't just vouch—I couldn't just say whether she said they would get the building, or he was, but they were both there. at the time this happened.

"Q. Who do you mean by 'they?' A. Mr. and Mrs. Ver Standig."

At another time: ". . . It was towards evening and Mr. and Mrs. Ver Standig were there and Mrs. Leon and myself, and the man who was doing the work on the step wanted to see Mr. Ver Standig the next morning and Mrs. Ver Standig reminded Mr. Ver Standig he had made another appointment for that morning, and Mrs. Leon said, 'Well, it is as important for you to take care of this, because, after all, you are only looking after your own interests, because the building will be yours some day.' "

MRS. O. M. ROTH: ". . . She told me how suddenly Mr. Leon died and how hard she took it and it was such a shock to her that she didn't just know about what to do and she called on Mr. Ver Standig and Mr. Ver Standig took hold of everything—seen to the funeral and I believe she said that even the funds was all tied up and he paid for the funeral bill and looked after all her business.

"Q. What else, if anything, did she say in that conversation? A. Well, then she says to me, 'Anna, he is not doing it for nothing. I promised that building to Jessie when I die for the work he is doing and the care he has given her, on De Baliviere there.' "

On a later date: ". . . she said: 'Anna, what do you think about this building?' I says: 'I guess it is all right,' and then she took me through and she says: 'This is the building I promised to give Jessie when I die, for the work Mr. Ver Standig is doing.' "

EDWARD C. MELSHEIMER: "Q. What was it Mrs. Leon said to Mr. Ver Standig? A. Mrs. Leon said to Mr. Ver Standig, 'Whenever that happens your property will be worth a lot more than it is today.'
. . . .

"Q. Did you ever discuss with her why it was you had to take things up with Mr. Ver Standig? A. Yes. Because she told me it was going to be his property eventually, why should I bother her."

EUGENE J. ALTHEIMER testified that Mrs. Leon, speaking of Mr. Ver Standig said: "Well, she would say: 'I have to take it up with Ben.' And then, of course, when I found out who Ben was, I would say to her, 'Why do you want to burden him, he has got his own business?' 'Well,' she says, 'it isn't bothering him.' She said, 'His wife is my favorite niece and we feel like she is a daughter, and she will get this property anyhow, and even if he does this work, the property will go to her when I die.' . . ."

"A. Well I would get naturally out of her argumentative doubt and would repeat, Why do you want to bother Mr. Ver Standig? 'If he is going to be paid for this—his wife is going to get this, let him do that work. His wife is going to get this piece of property.'

"Q. Did she say when she was going to get it? A. At her death."

Although the above testimony shows that on an occasion when Mrs. Weil was talking about Ver Standig alone she referred to the property as "your" property and at another time when she was talking about both Mr. and Mrs. Ver Standig she also referred to "your" property, yet that is not sufficient to contradict the explicit testimony of other witnesses that the property was to be devised to the plaintiff. We recognize the loose fashion of referring to property of a husband or a wife as the property of both, especially by a member of the family who would have no particular reason or would be under no exigency to observe the distinction. By all the testimony it was clearly established that the specific property was to be devised for the services to be rendered. We find no abuse of confidence or

advantage taken of Mrs. Weil because of the relationship with Ver Standig. Her shrewdness is conceded.

■ The defendants' evidence does not dispute or contradict the testimony about the contract. It merely tends to establish that after Cora Leon's marriage to Weil her former cordial relations with the Ver Standigs became strained. Nor does it show any disagreement about the services rendered before the marriage. While there is no evidence of any services rendered after the marriage, yet there is no direct evidence to the contrary that Ver Standig refused his services or breached the contract. When one party to a contract has performed as fully as he has been permitted, such partial performance is sufficient consideration for the enforcement of the contract if the failure to execute the contract would constitute a fraud on him. [Gupton v. Gupton, 47 Mo. 36; Pomeroy's Specific Performance of Contracts (3 Ed.), sec. 145.]

We are of the opinion that the contract was established in accordance with the rules set out. The services rendered were of a peculiar nature not intended to be measured by any pecuniary standard, and were referable to the contract. [62 S. W. (2d) l. c. 1098.]

■ We must now determine how the contract affects the rights claimed in one-half of the same property by the devisees of Weil, the latter having renounced the will and taken the one-half interest as allowed by statute. [Sec. 325, R. S. 1929, 1 Mo. Stat. Ann., p. 212, as construed in Garrett v. Damron (Mo.), 110 S. W. (2d) 1112.] On his death this one-half interest passed to his devisees under his will.

By electing to take under the statute, Weil took a one-half share subject to the payment of his wife's debts but the contract to devise this property cannot be considered in the same category as a debt against the estate. Even though a devise be made in satisfaction of a debt, it is still technically a legacy. [Rowe v. Strother, 341 Mo. 1149, 111 S. W. (2d) 93.] "Debts" generally means debts due by the deceased or expected to be due in his lifetime. [Callaway v. Title Guaranty & Trust Co., 132 Mo. App. 466, 111 S. W. 905.]

When Cora Leon and Weil were married new relationships and resulting rights sprang up. With her death these rights crystallized in her husband. It is true that they arose after the contract was made, but where a bill is brought for the specific performance of a contract, the after-acquired rights of third parties are equitable considerations to be regarded in adjudicating the questions. [Curran v. Holyoke Water Power Co., 116 Mass. 90.] The contract will not be enforced to the harm of the innocent.

Nowhere in the evidence is there anything to show that Weil had any knowledge of the contract. When he married Cora Leon the plaintiff was charged with the knowledge that if he survived his wife he would have by law an interest in the property. When he exercised his right to take one-half of the very property involved, no word came

from the plaintiff that she claimed an interest in it. On the other hand, her husband filed a claim on his own account against the estate, not against this property precisely, but on *quantum meruit*. Under these circumstances, in balancing the equities as we must, it is clear that the one-half interest now vested in Julius Weil's devisees cannot be subject to the contract. [See Owens v. McNally, 113 Cal. 444, 45 Pac. 710; Arland's Estate, 131 Wash. 297, 230 Pac. 157; Mayfield v. Cook, 201 Ala. 187, 77 So. 713.]

Plaintiff is entitled to the remaining one-half interest and is likewise entitled to one-half of the rents and profits received from said property since November 12, 1929, and to an accounting of the same. In view of these conclusions it becomes inutile to pass on other assignments of error.

The judgment of the trial court should be reversed and the cause remanded for further proceedings in harmony with this opinion. It is so ordered. All concur.