LIZZIE MANESS v. JOSEPH C. GRAHAM and STELLA GRAHAM, His Wife, THOMAS GRAHAM and GERTRUDE GRAHAM, His Wife, WALTER GRAHAM and GERTRUDE GRAHAM, His Wife, LILLIE COLEMAN and PRESTON COLEMAN, Her Husband, FANNIE DRENNEN and HERBERT DRENNEN, Her Husband, MINNIE WILEY and EUGENE WILEY, Her Husband, LILA PAROCK, also known as LOLLIE PAROCK, and ROBERT A. PAROCK, Her Husband, and PAULINE GRAHAM, a Minor, and THOMAS GRAHAM, WALTER GRAHAM, J. C. GRAHAM, and EUGENE WILEY, as Administrators of the Estate of W. P. GRAHAM, and A. R. McKEE, as Sheriff of Jefferson County, Appellants.—142 S. W. (2d) 1009.

Division Two, September 10, 1940.*

---

*NOTE: Opinion filed at September Term, 1939, May 4, 1940; motion for rehearing filed; motion overruled at May Term, 1940, July 3, 1940; motion to transfer to Court en Banc filed; motion overruled at September Term, 1940, October 10, 1940.

*Milton F. Napier* and *James T. Blair, Jr.,* for appellants.

*B. Sherman Landau* and *R. E. Kleinschmidt* for respondent.

BOHLING, C.—This is an appeal by the administrators of the estate and the heirs of Wilson P. Graham, deceased, from a decree awarding respondent specific performance of an alleged oral agreement to transfer approximately 320 acres of land, known as the "Con Carlin" tract, in Jefferson County and $1,000 cash, together with an award of $1,000 damages for the breach of a covenant, for services rendered by respondent to said Graham during his lifetime.

Respondent's motion to dismiss is overruled. At the oral argument counsel for respondent stated "respondent's additional abstract" contained all matters omitted from appellant's abstract. We, therefore, have a sufficient record before us to pass upon the issues presented. [Consult Dreyer v. Videmschek (Mo.), 123 S. W.. (2d) 63 [1]; Nordquist v. Nordquist, 321 Mo. 1244, 1247, 14 S. W.

(2d) 583[1].] Appellants' brief states our jurisdiction is invoked because title to real estate is involved.

Wilson P. Graham lived on a farm. For fourteen years prior to 1933 Mrs. Lizzie Maness, respondent, worked for Mr. Graham as housekeeper, receiving a monthly wage ranging from $10 to $30, room and board. In 1933 Mr. Graham, an elderly man of approximately eighty years, received injuries in an automobile accident which confined him in a hospital. ;Released from the hospital he was taken to the home of his son Joe in De Soto, Missouri. Joe procured the services of an attorney; and Mr. Graham and respondent, on May 27, ·1933, at the home of Joe, executed a written agreement wherein, subject to termination at any time. by either party, respondent agreed to work for Mr. Graham as housekeeper and to take care of him in case of sickness for a wage to be agreed upon between said parties but not to exceed $30 per month, and board and lodging.

Respondent and Melvin O'Harver, her son, were at Mr. Graham's place during his absence. Mr. Graham returned there about July 12, 1933. Mr. O'Harver testified respondent quit on July 25, 1933; that Mr. Graham told witness he would have to have respondent take care of him, that witness could not do it; that "He got me to beg Mom to come back and he said he would give her more than the $30 a month, and she said she would not come back for the $30 a month alone, and he then said if she would come back and take care of him until his death he would give her the Con Carlin place and a thousand dollars;" that witness communicated to respondent the offer of $30 a month, plus the Con Carlin tract and $1,000; and that respondent accepted the offer, returned to the Graham home and took care of Mr. Graham until he died June 10, 1937.

The automobile accident left Mr. Graham in a bad condition. He required nursing services and personal attention at the time he returned to his farm. He had suffered a severe injury to his right arm. We understand, it was practically useless. He could get around but could not do any work, and during the last year or so of his life he was virtually helpless. There was testimony that respondent dressed, fed, shaved and bathed him; administered to his crippled arm; gave him alcohol rubs; attended him most of the time as an invalid and, at times, had to assist him in answering calls of nature; et cetera. In addition to the ordinary household duties there was testimony that respondent milked the cows; fed the cattle, helped butcher; attended the garden and chickens, canned vegetables etc., chopped and split wood, prepared and marketed the dairy products, et cetera.

A number of witnesses testified that Mr. Graham had expressed himself as satisfied with Mrs. Maness' services; that she was doing more for him than any one else and stated to one witness he wished she would marry him. Other testimony was that he complained about his children turning him down and putting him out on his place by

himself; that, a short time before he died, he said respondent had earned $7,000 for him since 1933; and that, he also said, respondent quit soon after he returned to his farm and he hired her back and destroyed his copy of the original contract.

Frank Mulloy testified, among other things, that Mr. Graham made arrangements with him to take Mr. Graham, respondent and a Mr. Brinley to De Soto on June 8, 1937; that Mr. Graham said he wanted to attend to some business and needed some witnesses; but that on the morning of the 8th Mr. Graham took sick and died two days later.

Among other things, the chancellor found respondent entitled to specific performance of an oral contract to transfer the real estate, $1,000 cash, and the erection of a four room bungalow on the real estate at a cost of $1,000. The decree vested title to the real estate in respondent and awarded respondent, Mr. Graham having failed to erect the bungalow, $2,000 monetary judgment.

Appellants question Mr. O'Harver's competency as a witness; stating, in the trial court, that O'Harver was the agent of deceased, W. P. Graham, and that Mr. Graham's death rendered O'Harver incompetent as a witness. [Section 1723, R. S. 1929, Mo. Stat. Ann., p. 3994.] Bernblum v. Travelers Ins. Co. (Banc, 1937), 340 Mo. 1217, 1225[4], 105 S. W. (2d) 941, 944[8], holds, under Sec. 1723, an agent (speaking of the agent of a corporation) negotiating a contract for his principal does not become incompetent as a witness upon the death of the other party to the contract. Wagner v. Binder (Mo.), 187 S. W. 1128, 1151[17-23], reaches a like result (speaking of the agent of an individual). Miller v. Wilson, 126 Mo. 48, 54, 28 S. W. 640, 641, holds a plaintiff, seeking to cancel a deed, competent with respect to dealings with a living agent of deceased. [See also Orr v. Rode, 101 Mo. 387, 398(IV), 13 S. W. 1066, 1068(4); Brim v. Fleming, 135 Mo. 597, 605(II), 37 S. W. 501, 503(2).] If Sec. 1723, so far as its provisions are here involved, be viewed as an enabling or qualifying and not a disabling or disqualifying statute, then O'Harver, an agent making a contract for his principal, not being disqualified at common law (see Wagner v. Binder, supra, l. c. 1157; Jackson v. Smith, 139 Mo. App. 691, 696, 123 S. W. 1026, 1027), was a competent witness; or if the purpose of the statute, in part, was to effect a change in the common law with respect to the competency of witnesses and maintain an equality between the interested parties, then in the instant case the negotiators were both living. In either event O'Harver did not become incompetent upon Mr. Graham's death as a witness with respect to O'Harver's dealings, as Graham's agent, with respondent. [An interesting article on "The Surviving Witness" (in Missouri), by Benjamin F. Boyer, may be read in 7 K. C. L. R., p. 231.]

No issue is raised respecting the services rendered by respondent. The obligations assumed by Mr. Graham as pleaded in

respondent's petition were that, in addition to the monthly wage, he agreed to give respondent approximately $1,000 then on deposit in the American Bank at De Soto, Missouri; an additional $1,000; the Con Carlin tract of land, and seven good jersey cows, and that he would construct on the said land a bungalow of the value of $1,500 and a spring house for respondent. The judgment awarded respondent only the Con Carlin tract of land and $2,000; and appellants say that since the "contract counted on in the bill" was not established, the judgment may not stand. Appellants quote observations from Forrister v. Sullivan, 231 Mo. 345, 373, 132 S. W. 722, 730; Oliver v. Johnson, 238 Mo. 359, 373, 142 S. W. 274, 277[1]; and Hayworth v. Hayworth (Mo.), 236 S. W. 26, 28[2]. Appellants' position seems to have been more specifically considered in Walker v. Bohannan, 243 Mo. 119, 137, 147 S. W. 1024, 1029. There, the pleaded obligation was that deceased "would give said plaintiffs all his property." Considering this allegation covered all property, personal, mixed and real, owned by the deceased; and that the pleaded contract was not established by testimony, for instance, that deceased agreed to give "this place," the court said: "II. Under the rules, the contract pleaded must be the contract proven. A case of this kind does not differ from other suits upon contracts. In all suits upon contracts, if the plaintiff fail to prove the contract pleaded, his suit must fail, however equitable and just may be the contract actually proven. It is the old rule that the proof must conform to the pleading." A close reading of the Walker case, as well as the other cases cited by appellants, discloses ultimate holdings that the proof failed to measure up to the legal standard warranting the relief prayed (see Walker v. Bohannan, l. c. 140(III) and 1030(3), respectively), and the observations with respect to the pleading and proof were not necessary to the decisions. All were cases wherein judgments denying specific performance were affirmed. However, as appears to have been the situation in Walker v. Bohannan, as well as the situation contemplated in other discussions of or references to the issue in the cited cases, the variances between the pleaded and proved contracts were substantial and material and reached the subject matters thereof—fatal variances. Such is not the instant case. Respondent did not plead an obligation, for instance, covering the transfer of all of Mr. Graham's property and seek to establish the same by proof of an agreement or agreements to transfer specified items thereof. O'Harver's testimony, corroborated by other witnesses, established, in addition to the monthly wage admittedly paid, the pleaded obligations to transfer to respondent the Con Carlin tract and $1,000. One seeking to establish a parol contract with a deceased person is not a competent witness to the terms of the contract. He must rely upon the testimony of others. He may not be able to prove every obligation assumed by the deceased. If others were not present at the making of the agree-

ment, several witnesses whose knowledge may be limited and restricted to factual matters embracing only one or a few of the explicitly pleaded obligations may be required. If the chancellor refuses to give credence to some of the witnesses or given portions of their testimony or if such witnesses' knowledge falls short of facts definitely establishing the necessary contractural relation with respect to one or more of the obligations assumed by deceased, what amounts to a failure of proof with respect to said items occurs. This does not result in prejudice to the representatives of the obligor; and it does not necessarily follow that the obligations pleaded were not agreed to by deceased or that a plaintiff is to be deprived of the benefit of the pleaded provisions specifically and legally satisfactorily proved. Statutory provisions state variances between the pleading and the proof are not to be deemed material unless the adverse party has been actually misled (Sec. 817, R. S. 1929, Mo. Stat. Ann., p. 1070); and when not material, the court may direct the facts to be found according to the evidence, or may direct an immediate amendment without costs (Sec. 818, Ibid.) In actions of this nature the pleader should exercise care in alleging the terms of the contract for, in given instances, they may have exceptional probative value on the issue of contract or no contract. In the instant case a contract was proved to the satisfaction of the chancellor. The variance between the pleading and the proof was not such as to mislead appellants and was not so substantial and material as to necessarily defeat respondent's action; although the better practice would have been for the trial court to have required respondent to amend her petition to conform with the proof of the obligations assumed by deceased. [Berg v. Moreau, 199 Mo. 416, 426, 97 S. W. 901, 904, 9 L. R. A. (N. S.) 157.]

We are in full accord with appellant's cases, some are cited supra, with respect to the quantity and quality of the evidence required in cases of this nature. To refute respondent's case, appellants invoke the contract of May 27, 1933; and direct attention to their testimony that a few days after the burial of Mr. Graham the administrators asked respondent if Mr, Graham was indebted to her; that respondent replied he owed her $365 for services rendered during the last year of his life but that he was entitled to a credit of $100 for hay or feed sold to her, and that they delivered to respondent a check, marked "work in full," which she cashed. Appellants' evidence was contradicted.

There was testimony that respondent terminated the contract of May 27, 1933; that Mr. Graham rehired respondent and thereafter destroyed his copy of the contract; and that his copy of the contract was not found among his papers. Any question of the reasonableness of such action by Mr. Graham depended upon his need and his desire for respondent's services.

Respondent's evidence was to the effect the $265 check covered the monthly wages due, and that one of the administrators told her any claim she might have for the Con Carlin land and the $1,000 would have to be filed. In their settlement, the administrators took credit for the $265 as "salary." The appraisement filed in Mr. Graham's estate listed 958 acres of land and part of a city lot, total appraised value $15,000, of which $2,000 was allocated to the lot, and personal property of the value of $9,933.91. There was testimony that Mr. Graham valued his land at $30,000. One of the administrators put a value of $3,000 on the Con Carlin land as of the day of Mr. Graham's death. In these circumstances, giving consideration to the services rendered, their nature and duration, we are not inclined to disturb the findings of the chancellor insofar as they find substantial support of record. [Berg v. Moreau, 199 Mo. 416, 436(III), 97 S. W. 901, 907(3), 9 L. R. A. (N. S.) 157; McQuitty v. Wilhite, 247 Mo. 163, 171, 152 S. W. 598, 600[4, 5]; Schweizer v. Patton (Mo.), 116 S. W. (2d) 39, 42 [4-7]. Consult Ver Standig v. St. Louis Union Trust Co., 344 Mo. 880, 129 S. W. (2d) 905, 909[12].]

Appellants say an action at law for a money judgment would afford respondent an adequate remedy. Berg v. Moreau, 199 Mo. 416, 436, 97 S. W. 901, 907, 9 L. R. A. (N. S.) 157, quotes and applies Sutton v. Hayden, 62 Mo. 101, 114, viz.: "There are things which money cannot buy; a thousand nameless and delicate services and attentions, incapable of being the subject of explicit contract, which money, with all its peculiar potency, is powerless to purchase. The law furnishes no standard whereby the value of such services can be estimated, and equity can only make an approximation in that direction by decreeing the specific execution of the contract." If the chancellor believed, as he did, respondent's evidence, Mr. Graham contemplated and respondent rendered this character of service.

The chancellor found that Mr. Graham agreed to build a bungalow for respondent on the Con Carlin land, and awarded respondent $1,000 for his failure to perform said part of the contract. We have read the record with extreme care and find no substantial testimony on which to base the finding. The testimony is to the effect that, subsequent to respondent entering upon the performance of her duties, Mr. Graham said he "was going," "aimed" or "intended" to build said bungalow and a spring house for respondent, and give respondent seven jersey cows, et cetera. The affirmative evidence is that respondent accepted Mr. Graham's offer of a monthly wage of $30, the Con Carlin tract and $1,000 when the offer was communicated to her by witness O'Harver and entered upon the performance of her duties. There is no testimony of any substituted agreement. Statements thereafter made by Mr. Graham that he "was going," "aimed" or "intended" to build said bungalow, et cetera, were merely expressive

of gratitude on his part and a purpose to give, never executed, as an extra reward these additional items to respondent, and fall short of establishing a contractural relation warranting specific performance thereof in equity. Cases relied upon by appellants are applicable here. [Forrester v. Sullivan, 231 Mo. 345, 374(g), 132 S. W. 722, 731(g); Hayworth v. Hayworth (Mo.), 236 S. W. 26, 29[6]; Oliver v. Johnson, 238 Mo. 359, 374, 142 S. W. 274, 278; Woodard v. Stowell (Mo.), 222 S. W. 815, 821[5]; Mahoney v. Handley (Mo.), 250 S. W. 379, 380[1].]

The judgment should be and is reversed and the cause is remanded with direction to modify the findings and decree to the end that the award of $1,000 for Mr. Graham's failure to build a bungalow be expunged therefrom. In other respects it is affirmed. The better practice would be, we think, for the court to require respondent to amend the petition to conform with the legally proved obligations assumed by Mr. Graham. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur. *Ellison, P. J.,* in a separate opinion.

ELLISON, P. J. (concurring).—I concur in the principal opinion except the part thereof which criticizes the statement in Walker v. Bohannan, 243 Mo. 119, 137, 147 S. W. 1024, 1029, that says: "the contract pleaded must be the contract proven." That statement was true and has often been repeated in cases to enforce specific performance notwithstanding the Statute of Frauds. However, I agree that it means only there must be no substantial variance between the pleading and proof; and that the plaintiff should not necessarily be denied relief merely because his evidence fails to establish every *item* of the contract pleaded.