127 P.2d 239

### In re McGEE'S ESTATE.

### CURRENT et al. v. HUBBARD et ux.

### No. 4649.

Supreme Court of New Mexico.

May 21, 1942.

Reed Holloman, of Santa Fe, for appellants Williams heirs.

G. W. R. Hoy, of Farmington, for appellants McGee heirs.

Seth & Montgomery, of Santa Fe, and H. C. Palmer, of Aztec, for appellees.

MABRY, Justice.

There is involved in this appeal the question whether an oral contract to support and care for decedent Annie McGee, in return for all her property at her death, made by and between her and appellees Robert C. Hubbard and Annis Hubbard, his wife, should be specifically enforced.

Annie McGee was formerly the widow of Colonel Williams, who died in 1927, leaving an estate. She thereafter married one W. N. McGee, who died in August, 1938, leaving no estate, but having heirs at law who appear as separate appellants herein claiming upon some ground and contrary to the claims of the heirs of Colonel Williams, also appellants, in the event the contract and agreement with the Hubbards should be held unenforcible. She died on

Oct. 25th, 1938, of cancer from which she had been suffering for many years, but her illness appeared to become suddenly aggravated and critical only a short time before her death, and at about the time, but probably after and not before, the agreement in question was made.

The trial court, in the course of administering the estate of decedent Annie McGee, upheld the contract. In effect it held that Hubbards were to be treated as sole owners of the property as though heirs of the deceased. Wooley v. Shell Petroleum Corp., 39 N.M. 256, 45 P.2d 927. The two sets of heirs, the Williams, and the McGees, having as to each other adverse interests, appeal. Appellees have no interest in the controversy as between the heirs of Annie McGee's two husbands and such conflict of interests did not influence this case as it was decided by the trial court. In upholding the agreement with appellees, all the property of decedent Annie McGee goes to the Hubbards and there remains nothing for other claimants. The issue is narrow, and rather simple. It becomes a matter of determining whether the agreement under which appellees claim the estate of decedent will be enforced as an obligation to convey the entire estate, or whether the services rendered by appellees as shown by the findings hereinafter discussed, are of the kind that they can be compensated for by monetary measure. In the latter event, such measure would be employed and the agreement to convey would not be enforced. The parties hereto differ only as they appraise the findings and conclusions of the court, and as they would apply the rules of equity.

Appellees, the Hubbards, claim under an oral agreement made with the decedent in her lifetime and the judgment here appealed from was based upon this agreement, as we have said. Appellees are not interested in any controversy between the two sets of heirs, the Williams or the McGees. If the trial court was correct in its holding that the alleged agreement in question was made and that it is invulnerable to the attacks upon it, the judgment must be affirmed and no other question becomes important to a decision of the case.

The findings of the court to the effect that such an agreement was made are amply supported by the testimony. Appellants' attack upon the findings upon this point is not so vigorous as upon the other question they present, which is, that, even if made, the services rendered over the brief period of time that the decedent lived with appellees are susceptible of being ascertained in monetary measure and that therefore the alleged agreement under which they were to receive all of decedent's property at the time of her death should not be enforced.

Appellants seem to contend for a rule which would allow such an agreement to stand only if and when it be shown that the promise which induced decedent to so give away her considerable property, was fully carried out and that the performance thereof could not be compensated for in money

value and that in performance of the services there was "changed the whole course of the promiser's life." They rely much upon Cooper v. Colson, 66 N.J.Eq. 328, 58 A. 337, 105 Am.St.Rep. 660, 1 Ann.Cas. 997. Among other cases cited and relied upon are Paulos v. Janetakos, 41 N.M. 534, 72 P.2d 1; Holsz v. Stephen, 362 Ill. 527, 200 N.E. 601, 106 A.L.R. 737; Selle v. Selle, 337 Mo. 1234, 88 S.W.2d 877; In re Candelaria's Estate, 41 N.M. 211, 67 P.2d 235; Brown v. Freese et al., 28 Cal.App.2d 608, 83 P.2d 82; Brennen v. Derby et al., 124 Or. 574, 265 P. 425; Townsend v. Vanderwerker, 160 U.S. 171, 16 S.Ct. 258, 40 L.Ed. 383; Christin et al. v. Clark et al., 36 Cal.App. 714, 173 P. 109. See authorities cited under note to 106 A.L.R. 737, and 69 A.L.R. 14.

Appellees, on the other hand, contend the true rule to be not that the whole course of promisee's life need be changed, in the performance of the services, but that the condition is met, if the contract is fairly entered into, the labor or services performed are exceptional in character, and cannot be measured by monetary standards, and compensation to be paid therefor is not wholly unreasonable. Appellees approve the rule as set forth by the note-writer in 69 A.L.R. at page 133, where it is said:

"It seems that in order for part performance to operate to take a contract of the kind under consideration out of the operation of the Statute of Frauds, the services must be exceptional and extraordinary in character, or it must appear that the promisee's whole course of life was changed by performance of the contract." (Emphasis ours.)

Appellees do not contend that the whole course of their lives has been changed, or even substantially affected for a long period of time, but urge that the services were "exceptional and extraordinary in character", and of such a kind that they were not intended by the parties to be, and in fact could not be, measured in money.

It is agreed by both appellants and appellees that in cases of this character, where specific performance of contract to convey is sought, each case must be decided upon its own particular facts. Appellees cite and rely upon the following cases: Maness v. Graham, 346 Mo. 738, 142 S.W. 2d 1009, 139 A.L.R. 225; Bick v. Mueller, 346 Mo. 746, 142 S.W.2d 1021; Hanson v. Bowman, 199 Minn. 70, 271 N.W. 127; Resor v. Schaefer, 193 Wash. 91, 74 P.2d 917; Owens v. McNally, 113 Cal. 444, 45 P. 710, 33 L.R.A. 369; Brooks v. Yarbrough, 10 Cir., 37 F.2d 527; Lothrop v. Marble, 12 S.D. 511, 81 N.W. 885, 76 Am. St.Rep. 626; Vandiver v. Stone, 149 Or. 426, 41 P.2d 247; Neal v. Hamilton, 159 Md. 447, 150 A. 867; Brinton v. Van Cott, 8 Utah 480, 33 P. 218; Lacey v. Zeigler, 98 Neb. 380, 152 N.W. 792.

It will be conceded that the rule allowing specific performance of contracts to convey property in pay for services, even exceptional and extraordinary character, is not to be lightly, or too liberally,

applied. The door to fraud and overreaching is, in many cases, too easily opened; and the courts will examine with much care into the circumstances surrounding such agreements, and uphold them only where it clearly appears that the object of the rule allowing specific performance has been fairy met and not circumvented.

But, it is well recognized that there are many circumstances where the value of the services cannot be fairly and reasonably measured in dollars, and where it was never the intention that they should be. If this be such a case, then the judgment must stand; and we therefore examine the facts as disclosed by the findings, supported by evidence, to ascertain the answer.

The decedent, Annie McGee, had no blood relatives at the time of her death; she lived in San Juan county, New Mexico; for more than forty years, her first husband, W. H. Williams, died in the year 1927, and within a few years thereafter, she married William M. McGee, who died on August 17, 1938; she was quite elderly and was suffering with cancer, being in failing health at the time of her second husband's death; and that immediately thereafter she requested the said Annis Hubbard and her husband, Robert C. Hubbard, to take her into their home, promising that if they would so take her and care for her, in sickness and in health, until the time of her death, she, the said Annie McGee, would give, devise and bequeath to the said Annis Hubbard and her said husband, all the property both real and personal, owned by her at the time of her death; that the said appellants accepted the offer and took the decedent into their home in the month of August, 1938, or soon thereafter, and looked after and cared for her up to and until the time of her death, on October 25th, following; that said decedent was suffering with an advanced case of cancer and required constant attention both day and night during much of the time, and that such care and attention demanded was extremely difficult and trying because of the nature of the illness; that the decedent by the said agreement with the Hubbards, intended to and did obtain not only the care and attention which her illness and situation required, but she obtained also, the affection and an extraordinary degree of care and attention of the said Annis Hubbard for whom the decedent expressed love and affection; that she had the utmost confidence in both the Hubbards; and, that the decedent intended to obtain and did obtain from appellants more than mere board, lodging and hospital services; and that the particular and peculiar sevices performed pursuant to said contract and agreement by appellants, were of such a nature and kind, that the value thereof could not be estimated according to any pecuniary standard; and that it was not the intention of either decedent or appellant that the value of such services should be measured by such pecuniary standard.

The record does not disclose that either decedent or the Hubbards knew or felt at the time the agreement was made, that decedent had only a few weeks to live, although that was, in fact, the case. Decedent had been suffering from cancer over a long period of time but it had reached a stage which called for this constant and unusual care and attention at about the time of the agreement and when she entered the home of the Hubbards. In view of the court's findings of fact, we cannot say that the services rendered by appellants were not of that exceptional and extraordinary kind which were not intended to be and which cannot be measured in monetary value.

As we have said, the record fairly supports appellants' position that the agreement was actually—and fairly—entered into at the request of the decedent herself.

When it is determined that a contract was actually and fairly entered into, then, in view of the record, we have to make only one more inquiry, viz., could money purchase the services, love and affection so bestowed upon the deceased so that the value thereof could be reasonably ascertained, or were the services of such exceptional and extraordinary character as claimed?

We are not unmindful of the rule which is to the effect that where the value of the consideration for which the property of decedent is given is hopelessly inadequate, specific performance will not be decreed. Christin et al. v. Clark, 36 Cal.App. 714, 173 P. 109. But, inadequacy of consideration is not so easy to define when there is involved, as here, the question of services which are found to be exceptional and extraordinary in character.

It was said in Maness v. Graham, supra [346 Mo. 738, 142 S.W.2d 1013, 139 A.L.R. 225], that "There are things which money cannot buy—a thousand nameless and delicate services and attentions, incapable of being the subject of explicit contract, which money, with all its peculiar potency, is powerless to purchase. The law furnishes no standard whereby the value of such services can be estimated, and equity can only make an approximation in that direction by decreeing the specific execution of the contract." The Supreme Court of Minnesota in Hanson v. Bowman, supra [199 Minn. 70, 271 N.W. 130], observed that

"The general equity rule is that the value of intimate companionship and personal care and attention, such as is common among members of a family living together, cannot be measured in money so as to be recoverable in an action at law."

Many cases can be found in support of appellee's position, and distinctions can be seen between many of the cases cited by appellants and the one at bar, and this opinion need not be lengthened by extensive citations.

It is true that appellees were not thus carrying this unusual and extraordi-

nary burden for a long time. They carried it for a much shorter period than either the decedent or appellees may have anticipated, so far as the record discloses; but what would be said had Mrs. McGee lived for many months or years? The agreement was to care for her so long as she should live. She had lived for some years after knowing she had cancer, and there is nothing to show that she probably had only a short time to live at the time the arrangements with the Hubbards were made. The trial court, as we appraise its findings, obviously found no circumstances surrounding the case which threw the least suspicion upon the good faith of all parties either in initiating or executing the agreement. The property left had a net value of from $6,000 to $7,000, perhaps. It must be conceded that this was abundant or even more than adequate, compensation for a few weeks care of a sick patient, under many circumstances, considering only the matter of food, lodging and nursing. But there is support in the evidence for the court's findings that decedent sought and obtained more than this. She wanted, and she secured from appellees, love, affection and that extraordinary attention which, under the circumstances of her illness, must have called for considerable resolution and fortitude, even from these close friends. Certainly, the trial court's findings impel this reasoning, and the findings being supported within the rule of substantiality, so often approved by us, cannot be disturbed.

Finding no error the judgment is affirmed, and, it is so ordered.

BRICE, C. J., and ZINN, SADLER, and BICKLEY, JJ., concur.