PAUL BROZ, Plaintiff-Respondent, v. E. M. HEGWOOD, Administrator de bonis non of the estate of ADOLPH BROZ; ELIZABETH BROZ, ANNA SWANTNER, MARY SMETANA, THERESA HEGWOOD, RUDOLPH BROZ, ALBINA BROZ and JOHN BROZ, Defendants-Appellants.—163 S. W. (2d) 1009.

Division One, July 1, 1942.

Rehearing Denied, July 28, 1942.

*R. E. Kleinschmidt* for appellants.

*Charles W. Green* and *Matthes & Weier* for respondent.

CLARK, J.—Paul Broz sued the administrator and heirs of Adolph Broz, deceased, for specific performance of an oral contract whereby it is alleged that deceased agreed to convey to plaintiff (respondent) certain described real estate, in consideration for certain services to be rendered by plaintiff. The decree was for plaintiff and the administrator and some of the heirs have appealed.

The contract alleged in the amended petition on which the case was tried is as follows: "that in March, 1927, he (deceased)

told plaintiff, Paul Broz, that if he would get married and move on his, Adolph Broz, farm which he then owned, take care of him and pay taxes on said farm and take care of said farm he would at his death give plaintiff said farm, . . ."

. Some of the defendants made default. The others filed answer admitting certain allegations, denying all others and then stating: that plaintiff had prosecuted a claim for the same services, on quantum meruit, in the probate court where judgment had been rendered against him; that he had appealed to the circuit court and later dismissed the appeal; that by prosecuting his claim in the probate court plaintiff elected to abandon the alleged contract and is now estopped from asking specific performance of the contract based on the same services.

Appellants have made a number of assignments of error, all of which fall under two general questions, to-wit: (1) is respondent's suit barred under the doctrine of election of remedies? (2) is the evidence of the making of the contract and its performance by respondent sufficient to support the decree in his favor?

(1) The parties have cited a great many cases on the doctrine of election of remedies. The facts in each of them differ from those in the instant case, but they generally agree that the doctrine applies only where the party has but one cause of action, one right infringed, one wrong to be redressed. The doctrine does not require election between distinct causes of action arising out of separate and distinct facts. [28 C. J. S., sec. 3, page 1065, and cases cited.] Nor does it apply where a party has in fact only one available remedy, although he may think he has another which he pursues without avail. [28 C. J. S., sec. 3, page 1063; sec. 12, page 1080.]

. The claim filed in the probate court by respondent is worded as follows:

·"For general farm work done on the farm of Adolph Broz under the direction of the said Adolph Broz and at his special instance and request from the year 1918 to the year 1935, such as furnishing material and building a barn on the premises of Adolph Broz, for meals and board, washing and mending clothes from 1930 to 1935, at the special instance and request of the said Adolph Broz; all of said services said Adolph Broz agreed to pay claimant at his death, the total amount of said services so rendered, being of the reasonable value of Sixteen hundred and no hundredths dollars ($1600.00)."

The probate claim alleges an implied contract beginning in 1918, based on performing general farm work, furnishing meals and board and doing washing and mending; while the petition in the instant suit alleges an express contract made in March, 1927, on consideration that plaintiff get married, move on the farm, pay taxes, and take care of the farm and the owner.

Thus, while the two claims seem to have some features in common, it is apparent that they allege distinct causes of action. The expression "take care of said farm" includes the idea of management and supervision and means more than the doing of general farm work under the direction of the owner as alleged in the probate claim. The allegation that respondent agreed to "take care of" the deceased includes the furnishing of meals and board, washing and mending, but it may include a great deal more, such as care and attention in sickness. This broad meaning is authorized, as there was no motion to make the petition more definite and certain. The claim in the probate court did not obligate respondent to get married and move on the farm nor to pay taxes. The contract alleged in the petition calls for more and different services than those set up in the probate claim. It calls for management and maintenance of the farm and personal care of the owner in a home kept by respondent with the assistance of a wife, rather than as a bachelor.

The judgment against respondent in the probate court is not res judicata as to the instant suit, nor is respondent barred by the doctrine of election of remedies. [Boyken v. Sharp, 193 Mo. App. 607, 187 S. W. 90; Fritsch Foundry & Mach. Co. v. Goodwin Mfg. Co., 100 Mo. App. 414, 74 S. W. 136; Pillsbury v. Early, 324 Ill. 562, 155 N. E. 475.]

(2) This being a case in equity, we review the evidence and make our own findings of fact, giving due deference to ▮▮▮ the findings of the chancellor. [Presbyterian Orphanage v. Fitterling, 342 Mo. 299, l. c. 306, 114 S. W. (2d) 1004.]

The evidence shows that Adolph (sometimes called "Ed") Broz died intestate on March 17, 1935. He left an estate consisting of the farm involved in this suit, (a little more than one hundred acres) life insurance, bank deposit, notes and other personal property, the aggregate value of which is not disclosed. He was about seventy-five years old at his death, had been a widower for many years and had no children. His heirs were a brother and three sisters and the children of a deceased brother, respondent being one of the sons of the deceased brother. Adolph Broz suffered from asthma, and an injury had impaired the use of one of his hands, some of the fingers having been severed. After the death of his wife Adolph lived alone until 1929. Respondent, his sister and brothers and their father, until he died, resided on a farm about a mile distant and the other brother and sisters of Adolph lived in St. Louis.

Respondent's claim is supported by the testimony of his brother, John Broz, and his sister, Albina Broz, (which testimony is against their financial interests as heirs) and by Walter Kley, John H. Priest and Vernon J. Priest, who are not related to the parties.

Walter Kley said: that Paul worked on Adolph's farm long before he was married; that in March, 1927, Adolph told witness he was

going to see Paul and if he would get married and move on the farm he would give it to him when he (Adolph) died; that Paul married and moved on the farm in 1929, and has lived there since; that he did the farm work, fixed ditches, improved the farm by erecting fences and outbuildings, paid taxes and insurance; that Adolph took his meals there and was there every time witness was; that he said he liked the way Paul and his wife treated him; that Adolph had bad spells of ill health during the last few years of his life.

Albina Broz testified that she heard her uncle, Adolph, make the arrangement with Paul whereby he was to get married and move on the place, take care of Adolph and the farm, pay the taxes, insurance etc., and that he would get the farm when Adolph died. John Broz said he heard Adolph detail the terms of the agreement. Both Albina and John testified that Paul fully performed the agreement on his part; that in addition to other services and payments, Paul kept up the insurance of $6.27 per month, apparently on Adolph's life; that Adolph suffered from asthma for ten or fifteen years.

John H. Priest and Vernon J. Priest both testified that Adolph told them that Paul would get the place at his death because he was taking care of him.

For the defendants, Anton Broz and his wife testified. Both said they had no interest in the result of the suit. They said that both Paul and Adolph, at different times, told them Paul was renting the place for a share of the crops; that Adolph at one time complained to them about having to furnish some money to Paul and also said he was not going to make a will. Other witnesses who gave any material testimony were either defendants or close relatives of defendants. They testified to conversations with either Paul or Adolph to the effect that Paul was renting the farm and one of them said that Adolph expressed dissatisfaction with Paul.

The testimony of appellants' witnesses that Paul was renting the farm for a share of the crops is not a clear contradiction of respondent's witnesses, for they did not claim that Paul was to get the entire proceeds of the farm during the life of Adolph. The complaints said to have been made by Adolph in the absence of Paul, if competent evidence at all, are not very convincing of nonperformance of the contract by Paul.

The fact, if true, that Paul received a share of the proceeds of the farm during the life of Adolph might be a good defense to a quantum meruit suit for the limited services mentioned in the probate claim, and yet be no defense to the instant suit on an express contract to receive the land as compensation for more extensive services.

It would serve no useful purpose to review the cases cited by appellants. They all hold that an oral contract for the conveyance of real estate must be proved substantially as alleged by clear, cogent and convincing testimony.

The chancellor saw and heard the witnesses and was in a better position to weigh the testimony than we are. The record does not convince us that he erred in holding the proof sufficient to authorize specific performance under the requirements laid down in our previous decisions. [Berg v. Moreau, 199 Mo. 416, 97 S. W. 901; McQuitty v. Wilhite, 247 Mo. 163, 152 S. W. 598; Schweizer v. Patton (Mo.), 116 S. W. (2d) 39; Ver Standig v. St. Louis Union Trust Co., 344 Mo. 880, 129 S. W. (2d) 905; Maness v. Graham, 346 Mo. 738, 142 S. W. (2d) 1009.]

The decree is affirmed. All concur.