Bobby EASLEY, Respondent,

v.

Anna E. EASLEY, Administratrix of the Estate of Thomas Clifton Easley, Deceased, Anna E. Easley, as an Individual, Ralph E. Easley and Jack Easley, Appellants.

No. 47751.

Supreme Court of Missouri,

Division No. 1.

March 14, 1960.

Sevier & Turnage, Robert F. Sevier, William E. Turnage, Liberty, for appellants.

Withers & Kiser, Conn Withers, Gerald Kiser, Liberty, for respondent.

HOLMAN, Commissioner.

Suit in equity to enforce specific performance of an alleged oral contract to convey a tract of land containing 12.82 acres. The agreement was alleged to have been entered into between plaintiff and his grandfather, T. C. Easley, now deceased. The defendants are the surviving widow and children (legal heirs) of T. C. Easley and the administratrix of his estate. Alternatively, in a second count of the petition, plaintiff sought recovery for the reasonable value of certain work he had done for T. C., including labor performed and materials used in the construction of a house upon the tract of land heretofore mentioned. A trial of the first count resulted in a judgment and decree of specific performance which vested the fee simple title to the aforementioned tract in plaintiff, subject, however, to the marital interest, if any, of decedent's widow. Defendants (except plaintiff's mother, Ruth Easley, who defaulted) have duly appealed.

At the close of all the evidence plaintiff was permitted to amend his petition to conform to the evidence. The said amended petition alleged the oral contract in the following language: "Thomas Clifton Easley promised and agreed with the plaintiff that if plaintiff would stay and continue to work for him that the said Thomas Clifton Easley would build the plaintiff a new house on the said land hereinbefore described and that said Thomas Clifton Easley would deed the place to plaintiff."

As a young man (or perhaps a teen-age boy) plaintiff lived with T. C. and Anna

Easley for four years. He then spent two years in the army and, on February 16, 1953, shortly after his discharge, married Loretta. At that time plaintiff was farming with his grandfather and supplemented his income by trucking. It is evident from all of the evidence that plaintiff and his grandfather were very compatible and that T. C. obviously desired that plaintiff farm his land and work with him, and he was generous in helping plaintiff in various ways. Plaintiff and his bride started housekeeping on "Nebo Hill" in a house owned by her grandmother. By the fall of 1954 they had one child and were expecting another. The road to the house on Nebo Hill was not good and plaintiff's wife wanted plaintiff, perhaps with the aid of a GI loan, to get them a place of their own. Loretta testified that on a day in the fall of 1954 T. C. Easley had been at their home for dinner and as they were taking him home, "more or less just riding around," they passed a place called the "old Hughes place" which she had heard was for sale and she suggested that they stop and look at the place and see if it was suitable for them to purchase. She stated that Mr. Easley told them, " 'you wouldn't want that place' because it was all run down, the house didn't have electricity, was brushy * * * and so hilly that there couldn't be much farming done on it; 'there wouldn't be enough there to make a living on,' " to which Loretta replied that "at least it would be a home"; that plaintiff would "have to take another job to make a living because we were just barely getting by." She then testified as to the instant contract in the following language: "So, Granddad Cliff, T. C., said to Bob, that if he would stay and work for him, he would build us a new house on the land in the meadow next to John Samuels and that the house and the land would be ours if Bob would stay—would be Bob's if he would stay and work for him, and we kept our part of the bargain. Q. Did he say that he would deed the land to you? A. Yes, he did." The witness further testified that plaintiff started building the house

in December 1954 and that they moved into it on the first day of April 1955; that plaintiff did all of the labor connected with construction of the house except that he did not pour the basement nor plaster the walls; that he worked every day from the day the house was started until it was completed; that T. C. furnished all of the materials that went into the house except that plaintiff paid for a floor furnace, sink, and the materials for porches; that after they moved into the house plaintiff continued to farm his grandfather's land on the shares; he farmed 60 acres in the bottom and perhaps 20 acres of the hill land. In addition to that "he helped with the chores quite a bit. Especially there was a big snow storm and he'd go up and help with the chores and get water. Whatever was needed to be done, he helped. He built fence, cut brush and everything else that needed to be done, he did it." She further testified that the farming did not make a living for plaintiff and his family and, in the summer of 1955, he accordingly took a job at the Desert Gold Feed Company working the "4 to 12" shift and farming during the day; that in the summer of 1957 "Granddad" reported to plaintiff and Loretta that he had lost the deed to the tract in question. They helped him look for it but were not able to find it; that a few days later T. C. had plaintiff take him to Liberty to see a lawyer "to get the deed fixed up"; that the lawyer was in court and they waited all morning and when advised that the attorney would probably be in court all day they went home without getting the deed fixed as plaintiff had to go to work shortly before 4 o'clock in the afternoon. T. C. Easley died May 21, 1958.

John Samuels, who lived on the place adjoining the tract in question and whose mother had formerly owned that tract, testified that T. C. Easley frequently talked to him and that "most any time" that he talked with the witness after the construction of the house began he would say that he was giving the place to Bob; that on one particular occasion when they were

discussing the fact that a line fence would have to be built between the Samuels place and the tract in question the witness stated that T. C. said "that place was Bob's."

Another witness for plaintiff was Allan Clevenger who testified that he had known T. C. Easley for 60 years and that T. C. had told him more than once "that he gave Bob that place; that ground; that place up there."

J. J. Young who operated a filling station at Missouri City stated that he had been acquainted with Mr. Easley since 1941 and was familiar with plaintiff's house, and that on several occasions T. C. had mentioned to him "that he had given Bob land to build him a house."

The main witness for defendants was Anna Easley, the widow of T. C., who was 79 years old at trial time. She stated that she and T. C. had been married 62 years at the time of his death and that all of the land had been held in the name of T. C. individually; that at one time T. C. had owned the property where his parents had lived and since 1951 had owned the property where his son Jack had lived; that her husband had never told her about any contract with Bob about giving him the house and land; that after the house was built T. C. continued to pay the taxes on it; that her husband had never said anything about going to Liberty to make a deed and that she had never heard plaintiff make any demand for a deed to the place; that plaintiff's father and brothers helped him to some extent in building the house; that her husband was 82 at the time of his death and he did not leave a will; that there was no insurance on the house until after her husband's death when she took out a policy of insurance. She identified certain checks signed by her husband which tended to show that her husband had expended a little more than $3,500 for materials and other expenses in connection with the construction of the house. She identified certain other checks for varying amounts which her husband had apparent-ly given to plaintiff during the years 1953, 1954, 1955 and 1957. The last-mentioned checks were admitted upon the theory, advanced by defendants' counsel and which the court described as "pretty remote," as tending to show that whenever T. C. "felt he owed him anything or wanted to give him anything he gave him a check and that consequently, if he thought he owed him this place, he'd have made a deed to him."

Defendants also presented as a witness Ray Padget who had known Mr. Easley for 25 years and had once been his neighbor. He testified that he visited T. C. a short time before his death and they talked about "the events of when a person would die" and "I asked him how his affairs were taken care of; if he felt like they were in order and he stated that he did."

Defendant Ralph Easley, a son of T. C. Easley, testified that he had never heard his father say that plaintiff owned "that house" or that "he was going to give that house and land to Bobby"; that he had never heard his father make any statement "concerning the conditions under which this house was being built that Bobby now lives in."

Similar negative testimony was given by defendant Jack Easley, another son of T. C. Easley.

■ The answering defendants pleaded the statute of frauds. However, it is well settled that where the oral contract has been performed by one of the parties and it would be a fraud on that party to enforce the statute of frauds, a court of equity, under appropriate circumstances, will decree specific performance of the oral contract. We have said that "when a litigant seeks to enforce specific performance of an oral contract to convey land in the teeth of the statute of frauds, he will be held to clear and convincing proof therefor and the agreement must be explicit and supported by an adequate consideration." Smith v. Lore, 325 Mo. 282, 29 S.W.2d 91, 95. The rules applicable in this type of

case have been set out in detail as follows: "(1) the alleged oral contract must be clear, explicit, and definite; (2) it must be proven as pleaded; (3) such contract cannot be established by conversations either too ancient on the one hand, or too loose or casual upon the other; (4) the alleged oral contract must itself be fair, and not unconscionable; (5) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged was in fact made, and that the full performance, so far as lies in the hands of the parties to perform, has been had; (6) and the work constituting performance must be such as is referable solely to the contract sought to be enforced and not such as might be reasonably referable to some other and different contract; (7) the contract must be one based upon an adequate and legal consideration, so that its performance upon the one hand, but not upon the other, would bespeak an unconscionable advantage and wrong, demanding in good conscience relief in equity; (8) proof of mere disposition to devise by will or convey by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed made before the acts of performance relied upon were had." Walker v. Bohannan, 243 Mo. 119, 147 S.W. 1024, 1028-1029.

■ The trial court obviously found the facts in accordance with the testimony of Loretta Easley and the corroborating witnesses for plaintiff. Our study of the transcript has caused us to independently reach the same conclusion. We will therefore consider whether that evidence, when considered as true, would warrant a decree of specific performance.

■ The first contention of appellants is that the evidence did not bring this case within the rules heretofore quoted from the Bohannan case. It is said that the alleged contract, as testified to by Loretta was not clear, explicit and definite. They point to a number of contingencies that were not covered by the oral agreement. As we said in the Lore case, supra, "To be definite it does not always follow that a contract must be detailed." 29 S.W.2d 95. It is quite true that if plaintiff and T. C. had gone to an attorney and caused a formal contract to be prepared it would have been much more lengthy and detailed than the one shown by the testimony. It is apparent that T. C. was willing to give plaintiff the house and land so that plaintiff would live nearby and continue to farm his land and help in a general way with the care and operation of his farm lands. The contract related in the testimony was sufficient to encompass that understanding and was not so indefinite as to require refusal of the relief sought.

■ It is also contended that the contract was not proven as pleaded. Appellants point to the fact that it was alleged in the amended petition that Mr. Easley agreed to "build the *plaintiff* a new house" while Loretta testified that he said "he would build *us* a new house." We do not think the fact that she used the plural "us" in relating the terms of the contract is of any material significance. A little later in her testimony she stated that T. C. said the house and land "would be Bob's." The contention is without merit.

■■ Appellants also say that the conversation between Loretta and T. C. which took place in a motor car was so loose and casual that it cannot be accepted as proof of the contract. We do not regard the place where the conversation took place to be a matter of any significance. It is true, as contended, that Loretta did not testify that plaintiff stated that he would accept the proposal made by T. C. However, it would seem that the fact that plaintiff immediately began to build the house, occupied it when completed, and also carried out the other terms of the agreement would be sufficient to indicate that he had accepted T. C.'s offer.

■ The next contention is that the contract does not comply with the requirement that it must be fair and not unconscionable. While the agreement would appear to have been more beneficial to plaintiff than to Mr. Easley it could hardly be said to be unfair or unconscionable as to him. No doubt Mr. Easley had a desire to help plaintiff and intended to make the agreement more favorable to plaintiff than to himself. However, in a general way it may be said that T. C. agreed to convey almost 13 acres of land and spent about $3,500 in connection with building the house. On the other hand plaintiff (1) gave up his intention to purchase, with the aid of a GI loan, a farm of his own, (2) worked continuously for almost four months in building the house, (3) purchased and installed (apparently after moving into the house) a floor furnace and sink and bought material for and built porches, (4) continued to farm T. C.'s land on the shares, and (5) helped Mr. Easley "with the chores—built fence—cut brush—and everything else that needed to be done, he did it." The contention is without merit and is ruled adversely to appellants.

■ Appellants also contend that plaintiff did not prove full performance. They point to the fact that under the contract plaintiff was to "stay and work" for T. C. but that shortly after moving into the house plaintiff accepted employment with a feed company which required his services from 4 p. m. until midnight. We have concluded that the evidence would reasonably support a finding of full performance. The proof indicates that plaintiff had sufficient time each day before going to work at the feed company to continue the farming of T. C.'s land and to do other work for his grandfather. Moreover, the evidence clearly warrants the inference that T. C. was fully satisfied with the manner plaintiff performed the agreement.

It is not practical to separately discuss each particular mentioned in the appellants' argument which they say indicates that plaintiff has failed to show compliance with the eight requirements quoted from the Bohannan case. We have heretofore discussed some of them and will dispose of the remainder in the general discussion which follows.

■ As heretofore indicated we think the evidence is convincing to the effect that the contract in question was agreed upon by plaintiff and Mr. Easley. The testimony of Loretta and plaintiff's other witnesses is strongly corroborated by the circumstances. Plaintiff worked for almost four months in constructing the house. When it was substantially completed he moved into it and has since been in possession of the house and tract of land. He apparently treated the house as his own and thereafter made substantial improvements (floor furnace, sink, and porches) at his own expense. Appellants say that the circumstances indicate that Mr. Easley was merely building a house for plaintiff to occupy and point to the fact that he had previously provided homes for his parents and for his son Jack. We do not agree. It does not seem reasonable to us that plaintiff would do the work and expend the money he did on that house merely upon the hope that he would be permitted to live in it for some indefinite period of time. His grandfather was then nearing 80 years of age and would not likely live much longer. There is no evidence that plaintiff paid rent or occupied the house as a tenant. All of the circumstances tend to support a finding that plaintiff took possession of the premises under the agreement alleged rather than as a mere licensee. We conclude that plaintiff's possession was referable solely to the contract.

We hold that the evidence herein complies with all the conditions enumerated in the Bohannan case; that the contract as alleged was entered into between plaintiff and T. C. Easley; that the contract was fully performed by plaintiff and also was performed by Mr. Easley except that he failed to deed the property to plaintiff;

that this is a proper case for the intervention of a court of equity in decreeing specific performance. The case of Jennings v. Achuff, Mo.Sup., 272 S.W.2d 263, involving similar facts, supports the conclusion we have reached. Other cases tending to support our decision are Sportsman v. Halstead, 347 Mo. 286, 147 S.W.2d 447, Smith v. Lore, supra, and Roberts v. Clevenger, Mo.Sup., 225 S.W.2d 728.

Appellants tacitly concede that plaintiff performed certain labor for T. C. Easley but say that he can be fully compensated therefor by the payment of the reasonable value of said services out of the estate and hence that specific performance of the alleged contract should not have been decreed. In support of that contention they cite Selle v. Selle, 337 Mo. 1234, 88 S.W.2d 877, and Dieckmann v. Madden, 349 Mo. 312, 160 S.W.2d 724. In the Selle case there was evidence of an agreement to convey land to plaintiff if he would care for the promisor until his death. However, in that case the plaintiff had not taken possession of the land and had only cared for the promisor twelve days when the latter died. Under those circumstances the court denied specific performance because the services were of such short duration and could easily be compensated for in money. A similar result obtained in the Dieckmann case where there was evidence that the services rendered were not extensive.

A determination of the question of the adequacy of relief in the nature of a money judgment must depend upon the particular facts and circumstances in each case. In a number of cases we have held that the services were of such a nature that a money judgment would not afford adequate relief. See Berg v. Moreau, 199 Mo. 416, 97 S.W. 901, 9 L.R.A.,N.S., 157, Maness v. Graham, 346 Mo. 738, 142 S.W.2d 1009, 130 A.L.R. 225, and Powers v. Mercantile-Commerce Bank & Trust Co., Mo.Sup., 217 S.W.2d 375. "The existence of a legal remedy of such character as to afford a complete and adequate remedy which will preclude relief by way of a decree of specific performance is a matter depending upon the facts and circumstances of the particular case, and, as is the case with other forms of equitable relief depending upon inadequacy of the remedy at law, it is difficult, if not impossible, to formulate a definition or rule which will be a sufficient guide in all cases in determining whether adequate remedy at law exists. It is clear, however, that the mere fact that a party can avail himself of some relief at law does not preclude or defeat the jurisdiction of equity to decree specific performance. In order to defeat the jurisdiction of equity to decree specific performance of a contract, the remedy afforded at law must be as plain, adequate, complete, and efficient as the remedy of specific performance, and not circuitous or doubtful." 49 Am.Jur., Specific Performance, § 11, p. 20.

The trial court was evidently of the opinion that a money judgment would not afford plaintiff a complete and adequate remedy. We agree with that conclusion. While some of plaintiff's work could have been easily valued, there are other features incident to the contract for which a money valuation could not be fixed. For example, plaintiff, in reliance upon his contract with T. C., apparently decided to forego his intention of utilizing his right to a GI loan and purchasing a farm of his own. Furthermore, it cannot be overlooked that plaintiff built the instant house with his own hands and has occupied it as a home since April 1, 1955. In that situation it is natural that he would develop a particular feeling toward that specific property and it would have a peculiar value to him. The services rendered by plaintiff were substantial and extended over a period of more than three years. We hold that under the circumstances of this case a money judgment would not afford an adequate and complete remedy and therefore the court properly decreed specific performance of the contract.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the Court.

All concur.